# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

KIRK MICHAEL FIELDS,

     *Plaintiff,*

v.

GWINNETT COUNTY
   POLICE DEPARTMENT,
ARIEL STEWART,
WAYNE JOHNSON,
ROINELL LEWIS,
CHRISTIAN D'ALLAIRD,
KYLE HOWSE, &
KAYELYN LEWIS,

     *Defendants.*

CIVIL ACTION FILE
NO. 1:22-CV-3684-LMM-JKL

## <u>AMENDED COMPLAINT</u>

## Table of Contents

**Preliminary Statement** ................................................................................. 1

**Parties** ........................................................................................................ 1

**Jurisdiction and Venue** ............................................................................. 3

**Factual Allegations** ................................................................................... 4

    A.  The Department's Policies ............................................................. 4

    B.  The June 2021 Arrest ..................................................................... 6

    C.  The March 2022 Arrest.................................................................. 9

**Claims for Relief – June 2021 Arrest** (*Against the Department &*
*Defendants Stewart, Johnson, & R. Lewis*) ................................................ 13

    Count I:  False Arrest ................................................................... 13

    Count II:  Excessive Force .............................................................. 15

    Count III:  Deprivation of Property .................................................. 16

    Count IV:  Trespass to Personal Property .......................................... 17

**Claims for Relief – March 2022 Arrest** (*Against the Department &*
*Defendants Howse, D'Allaird, & K. Lewis*)................................................ 18

    Count V:  False Arrest.................................................................... 18

    Count VI:  Excessive Force ............................................................. 20

    Count VII:  Deprivation of Property ................................................ 22

    Count VIII:  Trespass to Personal Property....................................... 22

**Prayer for Relief** ....................................................................................... 23

## Preliminary Statement

1.      *On two separate occasions*, Gwinnett County Police Department officers tased and arrested Plaintiff Kirk Fields, a homeless man. On both occasions, the officers decided in advance to send him to jail so to get him off the streets and arrested him for minor alleged offenses—littering and solicitation. When told he was being arrested, Mr. Fields asked to talk for a moment before being handcuffed. Rather than talking, the officers tased him. Then, after tasing him, the officers pinned him to the ground while they forced him into handcuffs. After they hauled Mr. Fields off to jail, they abandoned his property, which was ultimately lost or destroyed.

2.      The officers' conduct violated the Fourth and Fourteenth Amendments as well as Georgia law. Mr. Fields brought suit under 42 U.S.C. § 1983 and applicable state law to remedy those violations. This Amended Complaint now supersedes all prior Complaints in this case.

## Parties

3.      Plaintiff Kirk Fields is a citizen of the United States of America and the State of Georgia. He does not have a permanent address. He currently resides in the Gwinnett County Jail on unrelated charges.

4.      Defendant Gwinnett County Police Department (the "Department") is the organization of "county police," O.C.G.A. § 36-8-1, in and for Gwinnett County, with headquarters located at 770 Hi Hope Road, Lawrenceville, Georgia, 30044.

5.     Defendant Ariel Stewart (Badge No. 1985) was an officer of the Department for all times relevant to Mr. Fields's June 2021 arrest. Upon information and belief, Defendant Stewart resides in Gwinnett County. Defendant Stewart is named in her individual capacity.

6.     Defendant Wayne Johnson (Badge No. 896) was an officer of the Department for all times relevant to Mr. Fields's June 2021 arrest. Upon information and belief, Defendant Johnson resides in Jackson County. Defendant Johnson is named in his individual capacity.

7.     Defendant Roinell Lewis (Badge No. 1561) was an officer of the Department for all times relevant to Mr. Fields's June 2021 arrest. Upon information and belief Defendant R. Lewis resides in Barrow County. Defendant R. Lewis is named in his individual capacity.

8.     Defendant Christian D'Allaird (Badge No. 2001) was an officer of the Department for all times relevant to Mr. Fields's March 2022 arrest. Upon information and belief, Defendant D'Allaird resides in Jackson County. Defendant D'Allaird is named in his individual capacity.

9.     Defendant Kyle Howse (Badge No. 2068) was an officer of the Department for all times relevant to Mr. Fields's March 2022 arrest. Upon information and belief, Defendant Howse resides in Gwinnett County. Defendant Howse is named in his individual capacity.

10.     Defendant Kayelyn Lewis (Badge No. 2287) was an officer of the Department for all times relevant to Mr. Fields's March 2022 arrest. Upon information and belief, Defendant K. Lewis resides in Gwinnett County. Defendant K. Lewis is named in her individual capacity.

### Jurisdiction and Venue

11.     This Court has original subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331 because the claims arise under federal law.

12.     This Court has supplemental subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims. *See* Dkt. 8 at 2.

13.     The Court has general personal jurisdiction over all the Defendants because they are all domiciled or at home in Georgia.

14.     The Court also has specific personal jurisdiction over all the Defendants because the claims arise out of their alleged conduct in Georgia.

15.     Venue is proper in this District and Division because all Defendants reside in Georgia and one or more reside in Gwinnett County.

16.     Venue is also proper in this District and Division because the events giving rise to the claim occurred in Gwinnett County.

## Factual Allegations

### A.  The Department's Policies

17.     For all times relevant, the Department maintained a comprehensive Policy Directives Manual that governs the organization and its officers' conduct.

18.     <u>Policy 411</u> governs "Property and Evidence."

19.     Policy 411.01 describes the purpose: "To provide guidelines and procedures for the handling, control and disposition of evidence, found property, or property being stored for safekeeping."

20.     Policy 411.02 defines evidence: "Evidence is property that may be related to a crime, seized during the execution of a search warrant, *or property that may implicate or exonerate a person from a criminal charge*." (emphasis added).

21.     Policy 411.03(B) states in part: "*Officers will only seize or take control of property if it is evidence of a crime, found property, or property being stored for safekeeping. In* reference to found property, officers will make every effort to identify and notify the owner or custodian of the property unless doing so would jeopardize the investigation of a case." (emphasis added).

22.     Policy 411.03(F) states in part: "*Officers are responsible for logging all property and evidence into agency records and for placing it under the control of the Property and Evidence Unit before the end of their tour of duty unless exceptional circumstances exist*." (emphasis added).

23.  <u>Policy 501</u> governs the use of "intermediate weapons," including "Electronic Control Weapon[s]" ("ECWs" in the policy; herein also called "tasers").

24.  Policy 501.01 describes the purpose: "To set forth standards for the use of intermediate weapons when the use of non-deadly force is necessary and appropriate and *when the employee perceives that the sole use of weaponless control techniques will be ineffective and/or dangerous*." (emphasis added).

25.  Policy 501.06 states that "Employees must receive departmental approval and training and be able to demonstrate proficiency prior to carrying the authorized ECW. . . . Training regarding the department's use of force policies will be included during the initial certification and during the annual ECW recertification training."

26.  <u>Policy 507</u> governs the use of tasers.

27.  Policy 507.02 states: "It is the policy of this Department *to use only the force that is objectively reasonable to effectively bring an incident under control*, while protecting the safety of the officer, subject, and others. This includes the use of less-lethal options such as an ECW." (emphasis added).

28.  Policy 507.03(C)(3) states in part: "*The ECW should never be used near flammable liquids and fumes*. The ECW can ignite gasoline or other flammables."

29.  Policy 507.03(C)(6) states: "The human body reacts to an ECW by involuntarily becoming rigid and straight. Consideration must be given prior to using an

ECW on a person who is in physical control of a moving vehicle or in any other situation where the body's reaction might place the subject or others at an increased risk of injury beyond that which would be considered reasonable given the situation. *The primary risk of serious injury or death during an ECW deployment is the risk related to falls.* Authorized users should avoid deploying the ECW on persons next to swimming pools, on elevated platforms, *or other places where a fall can be more injurious.*" (emphasis added).

30.     Policy 507.03(D)(2) states: "Officers shall issue a verbal warning consistent with training prior to deploying the ECW, when feasible, *and allow a reasonable amount of time for the subject to comply* unless doing so would increase the risk of injury to officers, the subject involved, or bystanders." (emphasis added).

31.     Policy 507.03(D)(4)(b) states: "The officer shall be aware that an energized subject might not be able to respond to commands during or immediately following exposure."

32.     <u>Policy 701</u> governs "Training."

33.     Policy 701.17 requires that officers receive annual training to use tasers.

**B.  The June 2021 Arrest**

34.     In the months leading up to June 10, 2021, Mr. Fields had been living in the woods beside Wabash Road near Cannonball Court in Gwinnett County.

35.     In the days leading up to June 10, 2021, Mr. Fields was given a trespass

warning for the property on Cannonball Court.

36.     Also in the days leading up to June 10, 2021, Mr. Fields spoke to a Gwinnett

County Code Enforcement officer about his personal belongings.

37.     The Code Enforcement officer told Mr. Fields that if he had anything that

was trash, he could put it in black bags and leave it beside the road, and the gar-

bage pickup workers would take it. The Code Enforcement officer gave Mr. Fields

black plastic bags for Mr. Fields to use for this purpose.

38.     Mr. Fields intended to relocate from the Wabash Road area to an area near

Patterson Road. He also intended to put some of his belongings into a storage unit

on Lawrenceville Highway.

39.     On June 10, 2021, Mr. Fields was in the process of separating trash to be

thrown away—as directed by the Code Enforcement officer—from items he

would keep and move.

40.     Defendant Stewart arrived while Mr. Fields was actively separating his be-

longings, as directed by the Code Enforcement officer.

41.     When Defendant Stewart asked, Mr. Fields told Defendant Stewart about

the trespass warning, about his impending move, and about his intent to move

some items into a storage unit.

42.     Defendant Stewart was unable to determine whether the property where

Mr. Fields was standing was part of the Cannonball Court property for which Mr.

Fields had been issued a trespass warning.

43.     Defendant Stewart told Mr. Fields he was under arrest for trespassing.

44.     Mr. Fields responded that he had not been on the Cannonball Court property since receiving the trespass warning.

45.     Defendant Stewart then told Mr. Fields that he was under arrest for littering.

46.     Mr. Fields responded that he put the items in the trash bag as directed by the Code Enforcement officer.

47.     Defendant Stewart responded: "It doesn't matter, you are still going to jail."

48.     Mr. Fields then sat down with his hands between his legs and asked to speak to a supervisor.

49.     By that time, Defendants Johnson and R. Lewis had arrived on the scene.

50.     Shortly after Mr. Fields sat down, Defendants Stewart, Johnson, and R. Lewis began using physical force to handcuff him.

51.     While Mr. Fields was sitting down with his hands between his legs, Defendant Stewart tased him four times on his back, shoulder, and thigh.

52.     One of the three officers then handcuffed Mr. Fields.

53.     At no point did Mr. Fields threaten the Defendant officers.

54.     At no point did Mr. Fields strike, hit, or kick the Defendant officers.

55.     Defendant Stewart took Mr. Fields to jail.

56.     By the time he arrived at jail, Mr. Fields was experiencing chest pain, was

unable to stand on his own power, and had to be assisted into a wheelchair.

57.     None of the Defendant officers took custody of Mr. Fields's property.

58.     Upon information and belief, the Defendant officers either destroyed or abandoned Mr. Fields's property.

59.     Mr. Fields's property's total value was approximately $5,500.

60.     The Department reviewed the Defendant officers' conduct related to the June 2021 arrest and determined that the Defendant officers' conduct satisfied the Department's policies and procedures.

61.     Upon information and belief, at least one of the officers was wearing a body camera that captured the June 2021 arrest.

62.     Upon information and belief, Defendants have destroyed or otherwise failed to retain body camera footage of the June 2021 arrest.

63.     Upon information and belief, Defendants have no record that Defendant Stewart completed all required trainings and certifications for use of a taser.

64.     Upon information and belief, as of June 10, 2021, Defendant Stewart had not completed all required trainings and certifications for use of the taser.

65.     Prior to June 2021, Defendant Stewart had prior incidents where she used a taser that were investigated and reviewed by the Department.

**C.  The March 2022 Arrest**

66.     On March 24, 2022, Mr. Fields built a small fire on the side of Lawrenceville

Suwannee Road, in Gwinnett County, to keep himself warm.

67.    Defendant D'Allaird arrived on the scene and spoke with Mr. Fields.

68.    Mr. Fields answered all of Defendant D'Allaird's questions.

69.    Still, Defendant D'Allaird told Mr. Fields that Mr. Fields was "not fucking

listening" to Defendant D'Allaird.

70.    Defendant D'Allaird returned to his car and spoke on the radio and / or

phone with another Department employee, who stated: "Yeah, that should be the

same homeless guy that [a Lieutenant and his team] had dealt with extensively."

71.    The Department employee stated: "If we could take him to jail and get him

out of there, that'd be good."

72.    During the investigation, Mr. Fields waited where directed. He did not leave

or try to approach Defendant D'Allaird's car.

73.    Another officer stated over the radio and / or phone that he looked on the

system for a warrant for Mr. Fields's arrest but was unable to find one.

74.    A few minutes later, the fire department arrived on the scene and extin-

guished Mr. Fields's fire.

75.    The fire did not require the use of any hose or other equipment to extinguish

it. Instead, firefighters stepped on the fire to extinguish it.

76.    Mr. Fields sat on the guardrail beside the highway and spoke calmly with

fire department officers.

77.   Defendant D'Allaird told the fire department officers that "We've dealt with him extensively . . . I think they're gonna take him in, again."

78.   Defendant D'Allaird told the fire department officers that Mr. Fields had lighters near his fire.

79.   A few minutes later, Defendant D'Allaird's arrival, Defendant Howse arrived on the scene.

80.   Defendants D'Allaird and Howse discussed possible crimes for which they could arrest Mr. Fields, including burning restrictions, "D.C.," meaning disorderly conduct, and solicitation.

81.   Defendant Howse then said: "I'm gonna see if I can find something."

82.   Defendants Howse and D'Allaird then returned to their police cars to research possible violations.

83.   Based on conversations with the arson investigator, Defendants Howse and D'Allaird determined that Mr. Fields had not committed arson.

84.   Defendant Howse called another Department employee on the phone to discuss possible violations.

85.   The Department employee on the phone directed Defendant Howse to arrest Mr. Fields for solicitation.

86.   Upon information and belief, the Department Employee with whom Defendant Howse was speaking with a supervisor.

87.    During the time of their investigation, Defendant K. Lewis arrived.

88.    Defendants Howse, K. Lewis, and D'Allaird walked over to Mr. Fields, who was sitting on a cart with his belongings.

89.    Defendant Howse told Mr. Fields they were arresting him for panhandling.

90.    Defendant Howse grabbed Mr. Fields's right arm.

91.    Defendant K. Lewis grabbed Mr. Fields's left hand.

92.    Defendant D'Allaird then shot Mr. Fields with his taser. At the time, Mr. Fields was sitting on the guardrail beside the highway next to a steep hill.

93.    Mr. Fields's body went limp and he fell over the guardrail and then rolled down the hill into the woods.

94.    The Defendant officers ordered Mr. Fields to stand.

95.    Mr. Fields was unable to stand.

96.    The officers then ordered Mr. Fields onto his stomach.

97.    The three officers pinned Mr. Fields on his stomach and pulled his hands behind his back.

98.    The officers then handcuffed Mr. Fields behind his back.

99.    The officers subsequently zip-tied Mr. Fields's legs.

100.    Paramedics eventually arrived to evaluate Mr. Fields.

101.    Mr. Fields was taken to the hospital to receive medical treatment.

102.    Mr. Fields was then taken to jail.

103.   Upon information and belief, the Defendant Officers either abandoned or destroyed Mr. Fields's property, including a cell phone and a watch.

104.   Mr. Fields's property's total value was approximately $9,200.

105.   Upon information and belief, Defendants have no record that Defendant D'Allaird completed all required trainings and certifications for use of a taser.

106.   Upon information and belief, as of March 2022, Defendant D'Allaird had not completed all required trainings and certifications for use of the taser.

107.   Prior to March 2022 incident, Defendant D'Allaird had prior incidents where he used a taser that were investigated and reviewed by the Department.

108.   Several months later, a separate officer investigated the incident and determined that officers had failed to collect Mr. Fields's cell phone.

## Claims for Relief – June 2021 Arrest
### *(Against the Department & Defendants Stewart, Johnson, & R. Lewis)*

### Count I:   False Arrest

109.   The factual allegations of Section B are incorporated by reference.

110.   "An arrest without a warrant and lacking probable cause violates the Constitution." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

111.   For all times relevant, Defendants were acting under the color of state law.

112.   For all times relevant, Mr. Fields was not located on the Cannonball Court property for which he had received a criminal trespass warning.

113.   For all times relevant, Mr. Fields had complied with Code Enforcement

directives for the disposing of property.

114.    For all times relevant, Defendants Stewart, Johnson, and R. Lewis lacked probable cause to arrest Mr. Fields for trespassing.

115.    For all times relevant, Defendants Stewart, Johnson, and R. Lewis lacked arguable probable cause to arrest Mr. Fields for trespassing.

116.    For all times relevant, Defendants Stewart, Johnson, and R. Lewis lacked probable cause to arrest Mr. Fields for littering.

117.    For all times relevant, Defendants Stewart, Johnson, and R. Lewis lacked arguable probable cause to arrest Mr. Fields for littering.

118.    Prior to arresting Mr. Fields, Defendants Stewart, Johnson, and R. Lewis did not have a warrant.

119.    For all times relevant, it was the unofficial practice and policy of the Department to arrest homeless individuals to remove them from streets, regardless of those individuals' rights and regardless of whether the arresting officer had probable cause.

120.    The Department's unofficial practice and policy to arrest homeless individuals to remove them from streets, regardless of those individuals' rights and regardless of whether the arresting officer had probable cause, caused Defendants Stewart, Johnson, and R. Lewis to arrest Mr. Fields.

121.    Defendants Stewart, Johnson, and R. Lewis falsely arrested Mr. Fields's in

violation of Mr. Fields's constitutional right to be free from unlawful seizures.

122.   To the extent Mr. Fields was falsely arrested, any force used against him to carry out that arrest was necessarily excessive.

123.   Due to Mr. Fields's false arrest, he suffered physical damage, emotional anguish, deprivation of his freedom, deprivation of his property, and deprivation of his Constitutional rights.

124.   Defendants are liable under 42 U.S.C. § 1983 for their violations.

**Count II:   Excessive Force[1]**

125.   The factual allegations of Sections A and B are incorporated by reference.

126.   "The prohibition against unreasonable seizures encompasses a bar on the use of excessive force in the course of an arrest." *Crocker v. Beatty*, 995 F.3d 1232, 1246 (11th Cir. 2021) (cleaned up).

127.   For all times relevant, Defendants were acting under the color of state law.

128.   Mr. Fields was arrested for a minor code violation for a non-violent offense.

129.   At no time was Mr. Fields a threat to any Defendant.

130.   Defendant Stewart's use of a taser to subdue Mr. Fields was excessive and

---

[1] Count II is pled in the alternative to Count I and assumes (for purposes of this Count only) that Mr. Fields's June 2021 arrest was lawful. If, as Mr. Fields pleads in Count I, the arrest was unlawful, the force used was necessarily excessive and therefore "is subsumed in the illegal stop or arrest claim." *Lee v. Ferraro*, 284 F.3d 1188, 1193 (11th Cir. 2002).

unreasonable in light of the circumstances at the time of arrest.

131.   The Department reviewed Defendant Stewart's use of the taser and ratified it as having been undertaken pursuant to Department policy.

132.   Upon information and belief, Defendant Stewart was not properly trained and certified to use the taser.

133.   For all times relevant, it was the unofficial practice and policy of the Department to allow officers who are not properly trained and certified to use tasers.

134.   For all times relevant, it was the unofficial practice and policy of the Department to allow officers to use excessive force relative to the circumstances.

135.   The Department's unofficial policies concerning the use of a taser caused Defendant Stewart to unlawfully use the taser on Mr. Fields.

136.   Defendants Stewart, Johnson, and R. Lewis used excessive physical force to arrest Mr. Fields.

137.   The Department's unofficial policies and practices concerning the use of force caused the officers to unlawfully use excessive force on Mr. Fields.

138.   Due to the use of force, Mr. Fields suffered physical damage, emotional anguish, deprivation of his freedom, and deprivation of his rights.

139.   Defendants are liable under 42 U.S.C. § 1983 for their violations.

**Count III:   Deprivation of Property**

140.   The unlawful seizure and destruction of property violates the Fourth

Amendment and Procedural Due Process. *See, e.g., Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (11th Cir. 2016).

141.   For all times relevant, Defendants were acting under the color of state law.

142.   Defendants Stewart, Johnson, and R. Lewis failed to properly collect and log Mr. Fields's property.

143.   The Department failed to properly secure and return Mr. Fields's property.

144.   The Department has an unofficial policy or practice of destroying or abandoning the property of homeless individuals when they are arrested.

145.   The Department's unofficial policy or practice of destroying or abandoning the property of homeless individuals when they are arrested caused Defendants Stewart, Johnson, and R. Lewis to fail to properly collect and log Mr. Fields's property.

146.   As a result of those failures, Mr. Fields's property was lost or destroyed.

147.   The Defendants' abandonment or destruction of Mr. Fields's property violated his Constitutional rights.

148.   Defendants are liable under 42 U.S.C. § 1983 for their violations.

**Count IV:   Trespass to Personal Property**

149.   Under Georgia law, "The owner of personality is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. "Interference with the mere possession of a chattel, even if the

possession is without title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession." O.C.G.A. § 51-10-2. "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." O.C.G.A. § 51-10-3; *Caldwell v. Church*, 341 Ga. App. 852, 856 (2017), *disapproved of on other grounds by Gen. Motors, LLC v. Buchanan*, 313 Ga. 811, 874 (2022).

150.   Under O.C.G.A. § 17-5-54, law enforcement officers must follow specific procedures when "assum[ing] custody of any personal property which is the subject of a crime or has been abandoned."

151.   Defendants Stewart, Johnson, and R. Lewis failed to properly collect and log Mr. Fields's property.

152.   Defendants Stewart, Johnson, and R. Lewis were acting within the scope of their Department employment when they failed to collect and log the property.

153.   The Department failed to properly secure and return Mr. Fields's property.

154.   As a result of those failures, Mr. Fields's property was lost or destroyed.

155.   The Defendants are liable for trespass to personal property.

<div align="center">

**Claims for Relief – March 2022 Arrest**
*(Against the Department & Defendants Howse, D'Allaird, & K. Lewis)*

</div>

**Count V:   False Arrest**

156.   The factual allegations of Section C are incorporated by reference.

157.   "An arrest without a warrant and lacking probable cause violates the Constitution." *Brown*, 608 F.3d at 734.

158.   For all times relevant, Defendants were acting under the color of state law.

159.   At no time when he was beside Lawrenceville Suwannee Road was Mr. Fields soliciting business or offering any services to anyone.

160.   For all times relevant, Defendants Howse, D'Allaird, & K. Lewis lacked probable cause to arrest Mr. Fields for soliciting.

161.   For all times relevant, Defendants Howse, D'Allaird, & K. Lewis lacked arguable probable cause to arrest Mr. Fields for soliciting.

162.   Prior to arresting Mr. Fields, Defendants Howse, D'Allaird, & K. Lewis did not have a warrant.

163.   For all times relevant, it was the unofficial practice and policy of the Department to arrest homeless individuals to remove them from streets, regardless of those individuals' rights and regardless of whether the arresting officer had probable cause.

164.   The Department's unofficial practice and policy to arrest homeless individuals to remove them from streets, regardless of those individuals' rights and regardless of whether the arresting officer had probable cause, caused Defendants Howse, D'Allaird, & K. Lewis to arrest Mr. Fields.

165.   Defendants Howse, D'Allaird, & K. Lewis falsely arrested Mr. Fields's in

violation of Mr. Fields's constitutional right to be free from unlawful seizures.

166.    To the extent Mr. Fields was falsely arrested, any force used against him to carry out that arrest was necessarily excessive.

167.    Due to Mr. Fields's false arrest, he suffered physical damage, emotional anguish, deprivation of his freedom, deprivation of his property, and deprivation of his Constitutional rights.

168.    Defendants are liable under 42 U.S.C. § 1983 for their violations.

**Count VI:   Excessive Force**[2]

169.    The factual allegations of Sections A and C are incorporated by reference.

170.    "The prohibition against unreasonable seizures encompasses a bar on the use of excessive force in the course of an arrest." *Crocker*, 995 F.3d at 1246 (cleaned up).

171.    For all times relevant, Defendants were acting under the color of state law.

172.    Mr. Fields was arrested for a minor code violation for a non-violent offense.

173.    At no time was Mr. Fields a threat to any Defendant.

174.    Defendant D'Allaird's use of a taser to subdue Mr. Fields was excessive and

---

[2] Count VI is pled in the alternative to Count V and assumes (for purposes of this Count only) that Mr. Fields's March 2022 arrest was lawful. If, as Mr. Fields pleads in Count V, the arrest was unlawful, the force used was necessarily excessive and therefore "is subsumed in the illegal stop or arrest claim." *Lee v. Ferraro*, 284 F.3d 1188, 1193 (11th Cir. 2002).

unreasonable in light of the circumstances at the time of arrest.

175.   The Department reviewed Defendant D'Allaird's use of the taser and rati-

fied it as having been undertaken pursuant to Department policy.

176.   Upon information and belief, Defendant D'Allaird was not properly trained

and certified to use the taser.

177.   For all times relevant, it was the unofficial practice and policy of the Depart-

ment to allow officers who are not properly certified to use tasers.

178.   For all times relevant, it was the unofficial practice and policy of the Depart-

ment to allow officers to use excessive force relative to the circumstances.

179.   The Department's unofficial policies concerning the use of a taser caused

Defendant Stewart to unlawfully use the taser on Mr. Fields.

180.   Defendants Howse, D'Allaird, & K. Lewis used excessive physical force to

arrest Mr. Fields.

181.   The Department's unofficial policies and practices concerning the use of

force caused Defendants Howse, D'Allaird, & K. Lewis to unlawfully use exces-

sive force on Mr. Fields.

182.   Due to the use of force, Mr. Fields suffered physical damage, emotional an-

guish, deprivation of his freedom, and deprivation of his rights.

183.   Defendants are liable under 42 U.S.C. § 1983 for their violations.

**Count VII:   Deprivation of Property**

184.   The unlawful seizure and destruction of property violates the Fourth Amendment and Procedural Due Process. *See, e.g., Hoefling*, 811 F.3d at 1281.

185.   For all times relevant, Defendants were acting under the color of state law.

186.   Defendants Howse, D'Allaird, & K. Lewis failed to properly collect and log Mr. Fields's property.

187.   The Department failed to properly secure and return Mr. Fields's property.

188.   The Department has an unofficial policy or practice of destroying or abandoning the property of homeless individuals when they are arrested.

189.   The Department's unofficial policy or practice of destroying or abandoning the property of homeless individuals when arrested caused Defendants Howse, D'Allaird, & K. Lewis to fail to properly collect and log Mr. Fields's property.

190.   As a result of those failures, Mr. Fields's property was lost or destroyed.

191.   The Defendants' abandonment or destruction of Mr. Fields's property violated his Constitutional rights.

192.   Defendants are liable under 42 U.S.C. § 1983 for their violations.

**Count VIII:   Trespass to Personal Property**

193.   Under Georgia law, "The owner of personality is entitled to its possession. Any deprivation of such possession is a tort for which an action lies." O.C.G.A. § 51-10-1. "Interference with the mere possession of a chattel, even if the

possession is without title or is wrongful, shall give a right of action to the possessor, except as against the true owner or the person wrongfully deprived of possession." O.C.G.A. § 51-10-2. "Any unlawful abuse of or damage done to the personal property of another constitutes a trespass for which damages may be recovered." O.C.G.A. § 51-10-3; *Caldwell*, 341 Ga. App. at 856.

194.   Under O.C.G.A. § 17-5-54, law enforcement officers must follow specific procedures when "assum[ing] custody of any personal property which is the subject of a crime or has been abandoned."

195.   Defendants Howse, D'Allaird, & K. Lewis failed to properly collect and log Mr. Fields's property.

196.   Defendants Howse, D'Allaird, & K. Lewis were acting within the scope of their Department employment when they failed to collect and log the property.

197.   The Department failed to properly secure and return Mr. Fields's property.

198.   As a result of those failures, Mr. Fields's property was lost or destroyed.

199.   The Defendants are therefore liable for trespass to personal property.

### Prayer for Relief

Mr. Fields requests a trial by jury and prays that the Court award damages in an amount to be determined at trial, attorneys' fees under 42 U.S.C. § 1988, and any other relief the Court deems necessary and just.

*[Signatures appear on the following page.]*

Respectfully submitted, this 9th day of September, 2024.

<div style="margin-left:40%">

_/s/ E. Allen Page_
Amanda Kay Seals
Georgia Bar No. 502720
E. Allen Page
Georgia Bar No. 640163
BONDURANT, MIXSON
  & ELMORE, LLP
1201 West Peachtree Street, NW
Suite 3900
Atlanta, GA 30309
Tel: 404-881-4100
seals@bmelaw.com
page@bmelaw.com

_Attorneys for Plaintiff_

</div>

**Certificate of Service**

I certify that on September 9, 2024, I submitted the foregoing *Amended Complaint* via the Court's CM/ECF system, which will serve an electronic copy on all attorneys of record for current Defendants.

For Defendants who have not yet been served with process, Plaintiff will separately file proof of service once service is completed.


*/s/ E. Allen Page*
E. Allen Page