## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KIRK MICHAEL FIELDS, | PRISONER CIVIL RIGHTS 42 U.S.C. §1983 |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO.: 1:22-cv-3684-LMM-JKL |
| GWINNETT COUNTY POLICE DEPARTMENT; ARIEL STEWART; WAYNE JOHNSON; ROINELL LEWIS; CHRISTIAN D'ALLAIRD; KYLE HOWSE; AND KAYELYN LEWIS, | |
| Defendants. | |

,

## **NON-FINAL REPORT AND RECOMMENDATION**

This is a civil rights case. The case is before the Court on Defendant Howse's motion to dismiss the amended complaint [Doc. 80]; Defendants D'Allaird and K. Lewis's motion to dismiss the amended complaint [Doc. 89], Plaintiff's response to both of those motions [Doc. 91], and Defendant Howse, D'Allaird, and K. Lewis's reply [Doc. 96]; Defendants Gwinnett County Police Department ["GCPD"], Johnson, R. Lewis, and Stewart's motion to dismiss the amended complaint [Doc. 87], Plaintiff's response thereto [Doc. 92], their reply [Doc. 95]; and Plaintiff's sur-reply [Doc. 97].

1

## I.   BACKGROUND

A.   <u>**Brief Factual History**[1]</u>

Through counsel, Plaintiff, a homeless man, complains about two separate occasions – June 10, 2021 and March 24, 2022 – where Gwinnett County officers tased and arrested him.  (*See generally* Docs. 68, 75 ("Am. Compl.")).[2]  Briefly, on June 10, 2021, Officers Stewart, R. Lewis, and Johnson decided in advance to send Plaintiff to jail to get him off of the streets, arrested him for a minor offense, *i.e.,* littering, and when he asked to talk for a moment before being handcuffed he was tased, pinned to the ground, and forced into handcuffs.  (*Id.* ¶¶1, 31-35, 39-51). The officers abandoned or destroyed Plaintiff's property, which had a total value of approximately $5500.  (*Id.* ¶¶57-59).

In connection with the June 10, 2021 arrest, Plaintiff was charged by accusation with three counts of obstruction of an officer and one count of littering. (Doc. 87-2 at 2-3).  On July 8, 2021, Plaintiff entered an *Alford* plea to one count of

---

[1]    For the purpose of the motions to dismiss, unless otherwise indicated the facts in this section are taken from the amended complaint [Docs. 68, 75] since this Court must review those allegations as if they were true.  *Andrews v. Scott*, 729 F. App'x 804, 805 (per curiam) (11th Cir. 2018).

[2]    It is not clear why Plaintiff filed two amended complaints on the same day, as they appear to be the same.  For ease of reference and discussion I simply will refer to both as the amended complaint.

obstruction in connection with Defendant Stewart and the littering charge and the obstruction charges involving R. Lewis and Johnson were dismissed.[3]  (*Id.* at 4-5).

Likewise, on March 24, 2022, Defendants D'Allaird and Howse decided in advance to send Plaintiff to jail and ultimately chose to arrest him for the minor offense of solicitation.  (*Id.* ¶¶66-76, 79-80, 88-89).  While they were investigating possible violations with which to charge Plaintiff, Defendant K. Lewis arrived and the three of them walked over to Plaintiff, who was sitting on a cart with his belongings.  (*Id.* ¶¶88-89).  Defendant Howse told Plaintiff he was under arrest for panhandling/solicitation, Plaintiff asked if they could first talk about it, Howse grabbed him by the right arm, K. Lewis grabbed his left hand, D'Allaird shot Plaintiff with his taser, and Plaintiff fell over the guardrail next to the highway on which he had been sitting.  (*Id.* ¶¶89-93).  The officers ordered Plaintiff to stand, which he could not do, then ordered him onto his stomach, pinned him there, pulled his hands behind his back, handcuffed him, and subsequently zip-tied his legs.  (*Id.* ¶¶94-99).  These officers also abandoned or destroyed Plaintiff's property, including a cell phone and watch, which had a total value of $9200.  (*Id.* ¶¶103-04).

After the March 24, 2022 arrest Plaintiff was charged by accusation with three counts of obstruction of an officer and one count of interference with government

---

[3]    An *Alford* plea occurs when a defendant permits judgment to be entered against him on an intelligent plea of guilty accompanied by a claim of innocence. *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).

property.[4]  (Doc. 80-1 at 2).  On December 7, 2022 he entered an *Alford* plea to all four charges.  (*Id.* at 4).

## B.    Procedural History

Plaintiff originally filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983 in this Court in September 2022.  (Doc. 1).  Therein, Plaintiff raised claims against Gwinnett County Police Officers Howse and John Doe based on events that occurred during three time periods:  (1) June to July 2021; (2) December 2021 to January 2022; and (3) March 2022.  (*Id.*).  Plaintiff also alleged that several unnamed officers also were involved in those events; however, the only other officer he eventually identified was Sergeant Smith.  (*See* Doc. 23).  The Court allowed Plaintiff's excessive force and state-law deprivation of property claims to proceed against both officers and dismissed the false arrest and false imprisonment claims. (Docs. 5, 8).  Based on Defendants' motion to dismiss the complaint, the Court also dismissed the official capacity state-law property claims.  (Docs. 14, 23, 27).  On October 25, 2023, the Court terminated the case for Plaintiff's failure to obey a lawful order of the Court.  (Docs. 41, 43).[5]

---

[4]    The interference with government property charge was based on Plaintiff's actions in kicking the door of the police car.  (*See* Doc. 89-2 at 2).

[5]    Prior to the dismissal, the Court appointed counsel Paul Gerard Wersant to represent Plaintiff pro bono at Mr. Wersant's request.  (Doc. 29).  Other than filing an emergency motion to respond to the motion to dismiss and to amend the

Seven months later Plaintiff filed a *pro se* motion to appoint new counsel and a motion for an ex parte hearing, in which he appeared to request setting aside the judgment and reopening the proceedings. (Doc. 46). In the meantime, Plaintiff also filed another *pro se* civil rights complaint against Officers Howse, Smith, and two other Gwinnett County police officers, Bishop and Stewart. *See Fields v. Bishop*, Civil Action No. 1:24-CV-2067-LMM-JKL ("*Fields II*"); (Doc. 49). In addition to complaining about the events at issue in this case, in *Fields II* Plaintiff also raised allegations about another apparent arrest on March 11, 2024 by the same officers. *Id.* at Doc. 1.

On May 24, 2024, I directed the Clerk to administratively close *Fields II* and to add it as a supplement to this case, and granted Plaintiff's motion to appoint new counsel. (Doc. 48). On May 28, 2024, the Court appointed Mr. Edwin Allen Page to represent Plaintiff [Doc. 50], and Plaintiff's motion to set aside judgment [Doc. 57] was granted on August 26, 2024. (Docs. 63, 67). On September 9, 2024, Plaintiff filed the amended complaint, which is the operative pleading in this case.

Therein, Plaintiff complains about the circumstances surrounding the June 10, 2021 arrest involving Defendants Stewart, R. Lewis, and Johnson, and raises claims for false arrest, excessive force, deprivation of property, and state law trespass to

---

complaint [Doc. 34], however, Mr. Wersant did not file any other pleadings on Plaintiff's behalf.

personal property.  (Am. Compl. ¶¶34-65, 109-55).  Plaintiff also complains about the circumstances surrounding his March 24, 2022 arrest in relation to Defendants Howse, D'Allaird, and K. Lewis, and raises claims for false arrest, excessive force, deprivation of property, and trespass to personal property.[6]  (Am. Compl. at ¶¶66-108, 155-99).  He seeks monetary relief.  (*Id.* at 25).

All of the Defendants argue that Plaintiff's claims should be dismissed because:  (1) Plaintiff's false arrest and excessive force claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); (2) they are entitled to qualified immunity; (3) Plaintiff's property claim is too conclusory to warrant relief; and (4) they are entitled to official immunity in connection with Plaintiff's claim for trespass.  (Docs. 80, 87, 89).  Defendants have provided evidence from the bodycams of all three officers involved in each arrest.  (Doc. 80-3, Ex. B-1 ("Howse BCF"); Doc. 80-4, Ex. B-2 ("D'Allaird BCF"); Doc. 80-5, Ex. B-3 ("K. Lewis BCF"); Doc. 83-3, Ex. C-1 ("Stewart BCF"); Doc. 83-4, Ex. C-2 ("R. Lewis BCF"); Doc. 83-5, Ex. C-3 ("Johnson BCF")).

All Defendants other than Howse raise additional arguments that Plaintiff did not properly serve those Defendants and the Court therefore lacks personal

---

[6]     In connection with both arrests Plaintiff pleads excessive force in the alternative to false arrest [Am. Comp. at 17 n.1, 22 n.2], since if the false arrest claim has merit the excessive force claim is derivative of, and would be subsumed within, that false arrest.  *See Bashir v. Rockdale Cnty.*, 445 F.3d 1323, 1332 (11th Cir. 2006).

jurisdiction over them, and that Plaintiff's federal claims are barred by the two-year statute of limitations for §1983 claims. (Docs. 87, 89). Finally, GCPD argues that it is not a legal entity with the capacity to be sued. (Doc. 87 at 2-3).

Plaintiff responds that: (1) he met his burden to demonstrate valid service of process; (2) *Heck* does not apply; (3) Defendants are not entitled to qualified immunity; and (4) Defendants are not entitled to official immunity. (Docs. 91, 92). Plaintiff also states that he does not oppose the dismissal of the alternative excessive force claim as against Defendants Stewart, R. Lewis, and Johnson with regard to the June 10, 2021 arrest. (Doc. 92 at 4). That portion of the motion to dismiss, therefore, is now unopposed and should be granted.

For the following reasons, I **RECOMMEND** that the motions to dismiss be **DENIED**.

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

When considering a motion to dismiss pursuant to Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1057 (11th Cir. 2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," something "more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action" is necessary. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the incorporation by reference doctrine, a court may consider a police officer's body camera video when reviewing a motion to dismiss without converting the motion into one for summary judgment. *Swinford v. Santos*, 121 F.4th 179, 188 (11th Cir. 2024); *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1276-78 (11th Cir. 2023); *see also Lewis v. City of Marietta*, No. 23-10614, 2023 WL 8234291, at *2 (11th Cir. Nov. 28, 2023) (per curiam) ("In ruling on a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." ) (internal quotation marks and citations omitted). At the motion to dismiss stage, bodycam footage is viewed in the light most favorable to the plaintiff, as are any ambiguities contained therein. *Baker*, 67 F.4th at 1277; *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024); *Robinson v. City of Huntsville*, No. 21-13979, 2022 WL 3867584, at *3 (11th Cir. Aug. 30, 2022) (per curiam).

Likewise, in resolving a motion to dismiss for insufficiency of service of process, a court may make factual findings necessary to resolve the motion dismiss

and, because any such motions do not address the merits of the claims, the court may consider facts outside of the pleadings and resolve factual disputes. *See N. Am. Sugar Indust., Inc. v. Xinjiang Goldwind Science & Tech. Co.,* No. 23-10126, 2025 WL 16775, at *7 (11th Cir. Jan. 2, 2025) (stating that a court may consider affidavits in support and opposition of a motion to dismiss for lack of personal jurisdiction); *Ellison v. Northside Hosp.*, No. 1:18-cv-3382-LMM-LTW, 2020 WL 13653840, at *1 (N.D. Ga. Sept. 10, 2020) ("The Court may make any factual findings necessary to resolve a motion to dismiss for insufficiency of service of process 'so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.'") (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)).

## B.    Correcting the Misnomer for GCPD Is Not Futile.

As an initial matter, Plaintiff acknowledges that he incorrectly named GCDC, and requests that the Court allow him to amend the complaint to correct the misnomer and change it to Gwinnett County, Georgia.    (Doc. 92 at 14-15). Defendant GCPD opposes any amendment by Plaintiff to correct the misnomer because, according to GCPD, any such amendment would be futile. (Doc. 95 at 13-15).[7]

---

[7]    Magistrate Judges are authorized to issue rulings as to any pretrial matter pending in a civil case upon referral from the presiding District Judge, but with respect to certain case-dispositive motions such as motions to dismiss for failure to

Specifically, GCPD first argues that Plaintiff's claims do not satisfy *Monell v. Dep't of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 694 (1978), in which the Supreme Court held that to establish county liability, a plaintiff must identify either (1) an officially promulgated county policy, or (2) an unofficial practice or custom of the county shown through the repeated acts of a final policy maker of the county.[8] According to GCPD, although Plaintiff set forth GCPD policies regarding already seized property or the use of force in the amended complaint, "none of the pled policies concern an affirmative duty to collect all property at a scene," the

---

state a claim, a Magistrate Judge is authorized only to issue a report and recommendation to the District Judge. 28 U.S.C. § 636(b)(1)(A). A motion seeking leave to amend is not listed as one of the categories of motions that Magistrate Judges lack authority to issue final rulings, and "[t]he weight of authority holds that motions to amend pleadings are non-dispositive matters which may be referred to a magistrate judge and reviewed by the district court under the 'clearly erroneous standard.'" *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652, 652 n.1 (N.D. Ga. 2008) (internal citation omitted) (Baverman, M.J.). Even so, because the request to amend is intertwined with the merits of Defendants' motions to dismiss, I am issuing my ruling as a report and recommendation rather than an order. Plus, as a practical matter, it would potentially create a procedural snafu if Plaintiff were to file an amended complaint before the District Judge has considered the motions to dismiss because the new complaint would become the operative complaint and arguably moot the pending motions.

[8]    Although Plaintiff argues that the Court should not consider this argument since Defendants raised it for the first time in their reply brief [Doc. 97 at 1-2], Defendants' argument was in response to Plaintiff's request to change GCPD to Gwinnett County. Plaintiff asks that if the Court does, in fact, consider the *Monell* argument that he be provided with time to respond thereto. (*Id.* at 2). Because I find that Defendants' argument is without merit, it is unnecessary for Plaintiff to respond.

destruction of property, an arrest of a homeless person under false pretenses, or the use of excessive force to effectuate an arrest. (Doc. 95 at 14).

Plaintiff, however, specifically alleges the following unofficial policies: "to arrest homeless individuals to remove them from the streets, regardless of those individuals' rights and regardless of whether the arresting officer had probable cause" [Am. Compl. ¶¶119-20, 163-64]; "to allow officers who are not properly trained and certified to use tasers" [*id.* ¶¶133, 177]; "to use excessive force relative to the circumstances" [*id.* ¶134]; and to destroy or abandon "the property of homeless individuals when they are arrested" [*id.* ¶¶144, 188]. Thus, at this stage of the proceedings, Plaintiff has stated enough to withstand the *Monell* issue, and, thus, it is **RECOMMENDED** that Plaintiff be allowed to amend the complaint to correct the misnomer.[9]

---

[9] Plaintiff suggests that the Court could alternatively direct the Clerk to change the name of GCPD to Gwinnett County, Georgia. (Doc. 92 at 16.) In support, he relies on *Williams v. DeKalb County Government*, where the Court directed the Clerk to correct the docket to reflect that the defendant's name was DeKalb County rather than "DeKalb County Government" as a matter of "clarity." No. 1:12-CV-0705-RLV-AJB, 2014 WL 12997819, at *5 (N.D. Ga. June 30, 2014). *Williams* is distinguishable, however, because the misnamed party was not a department of a governmental entity, as GCPD is here. Also, unlike here, DeKalb County essentially ignored the misnomer: it did "not conduct[] itself in such a way to suggest that it would take advantage of any error that may have occurred" and it "at all times has acted as though it considers itself to be a defendant in this lawsuit." *Id.* Thus, the Plaintiff should correct the misnomer via amendment under Rule 15.

**C.**    **Defendants Have Not Shown That Plaintiff's Claims Are Untimely.**[10]

Defendants simply state that Plaintiff's claims for false arrest, excessive force, and deprivation of property related to both arrests are barred by the two-year statute of limitations because these claims were not raised until Plaintiff alleged them in the September 9, 2024 amended complaint.  (Doc. 87 at 4; Doc. 89 at 4).  That mere statement, however, is insufficient.[11]

Indeed, "'[a] statute of limitations bar is an affirmative defense,' and a plaintiff is 'not required to negate an affirmative defense in [its] complaint.'" *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024).  Consequently, a statute of limitations defense can support dismissal "only if it is clear from the face of the complaint that the statute of limitations has run, and it appears beyond doubt that plaintiff can prove no set of facts that toll the statute." *Valencia v. Universal City Studios, LLC*, No. 1:14-CV-528-RWS, 2014 WL 7240526, at *3 (N.D. Ga. Dec. 18, 2014).  Given the procedural history of this case, it is not beyond doubt that

---

[10]    Several of Defendants' arguments in the motions to dismiss are similar if not the same.  To eliminate redundancy and for ease of reference and discussion, I will analyze those issues together unless it is necessary otherwise.

[11]    Defendants' argument appears to intertwine the statute of limitations issue with the alleged improper service of process argument, which is how Plaintiff responds thereto.  As discussed *infra* in Section II.D., Defendants' motion to dismiss for lack of service should be denied; therefore, any related statute of limitations argument also would be without merit.  Out of an abundance of caution, however, in this section I will review the independent statute of limitations argument, which also is lacking.

Plaintiff could prove no set of facts that would toll the statute.  Indeed, any statute of limitations argument does not take into account factors such as the apparent abandonment of Plaintiff by previous counsel, whether any of Plaintiff's claims would relate back to the original complaint, and/or whether equitable or any other type of tolling would apply.  Thus, to the degree that Defendants raise an independent statute of limitations argument, on this record the motions to dismiss based thereon should be denied.  *Cf. Estate of Russell ex rel. Gardner v. City of Anniston*, No. 1:15-CV-1080, 2017 WL 3620262, at *5 (N.D. Ala. Aug. 23, 2017) (finding issue of whether amended complaint relates back to initial complaint is inherently factual and undeveloped at motion to dismiss stage such that court cannot find beyond doubt that plaintiff could prove no set of facts that toll the statute of limitations).

## D.    __Plaintiff Has Met His Burden of Showing That Service Was Proper.__

All Defendants other than Defendant Howse seek dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(5) for improper service of process and resulting lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).[12]  (Doc. 87 at 3-5; Doc. 89 at 2-4).  Under both the Federal Rules of Civil Procedure and Georgia law, service

---

[12]    Defendant Howse originally waived service in this case. (Doc. 13).  Although Plaintiff also served Howse by delivering copies of the complaint and summons to Corporal Broccoli [Doc. 84], Defendant Howse does not raise that issue in his brief. In any event, the same reasoning also applies to him.

on an individual must be made by delivering a copy of the summons and complaint personally to the individual; leaving a copy of each at the individual's dwelling or abode with someone of suitable age and discretion who resides there; delivering a copy of each to an agent authorized by appointment or by law to receive service; or following state law for serving a summons.[13]  Fed. R. Civ. P. 4(e); O.C.G.A. §9-11-4(e).

In determining whether the burden of establishing valid service of process has been met, the Court applies the standards of proof governing motions to dismiss for lack of personal jurisdiction.  *Kammona v. Onteco Corp.*, 587 F. App'x 575, 578 (11th Cir. 2014) (per curiam) ("In assessing the validity of service of process, 'the standards of proof governing motions to dismiss for lack of personal jurisdiction' are applicable.") (citations omitted).  To that end, the party challenging service of process bears the burden of showing it was improper and must describe with specificity, *i.e.,* in a non-conclusory fashion, how the service of process failed to meet the procedural requirements of Fed. R. Civ. P. 4.  *King v. Lumpkin*, No. 1:11-CV-549-WSD, 2012 WL 12888676, at *5 (N.D. Ga. Feb. 13, 2012); *see also Binns v. City of Marietta Hous. Auth.*, No. 1:07-CV-0070-RWS, 2007 WL 2746695, at *2 (N.D. Ga. Sept. 18, 2007) ("An objection to service of process 'must be specific and

---

[13]    However, "Georgia's law regarding service of process mirrors that of the federal rules[.]"  *Ross v. Preston*, No. 1:08-CV-1811-WSD, 2008 WL 11334499, at *2  (N.D. Ga. Oct. 29, 2008).

14

must point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized.'") (citation omitted).  If the defendant meets that requirement, the burden shifts to the plaintiff to present "sufficient evidence to defeat a motion for a directed verdict." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

Given that the Court construes all inferences in the plaintiff's favor, if the plaintiff presents countering evidence, "the plaintiff's presentation of sufficient evidence to defeat a motion for directed verdict ends the inquiry favorably to the plaintiff." *Lakeview Loan Servicing, LLC v. Mobley*, No. 1:16-CV-4572-MHC, 2017 WL 11358740, at *2 (N.D. Ga. Oct. 2, 2017); *accord Olagundoye v. Aurora Loan Servicing*, No. 1:10-CV-3601-RLV-JFK, 2011 WL 13319509, at *1 (N.D. Ga. Apr. 21), *report and recommendation adopted*, 2011 WL 13319702 (N.D. Ga. May 11, 2011).  The burden then shifts back to the defendant to "rebut this prima facie case [of proper service] by presenting 'evidence which is not only clear and convincing, but the strongest of which the nature of the case will admit.'" *Aucoin v. Connell*, 209 F. App'x 891, 894 (11th Cir. 2006) (quoting *Yelle v. U.S. Suburban Press, Inc.*, 216 Ga. App. 46 (1995)); *see also Olagundoye*, 2011 WL 13319509, at *1 ("'If a plaintiff makes a *prima facie* showing of proper service, the burden shifts back to the defendant to bring strong and convincing evidence of insufficient process.'") (citation omitted).

Here, Plaintiff filed affidavits of service for Defendants that indicate that service on Defendants was effectuated by delivering copies of the summons and amended complaint to Corporal Robert Broccoli, GCDC's court liaison, on September 17, 2024. (Doc. 78). Defendants have submitted the affidavit of Corporal Broccoli, who attests that: his responsibility as court liaison is to serve as a contact between the GCPD and the courts, which includes distributing subpoenas for documents/evidence and court attendance to GCPD personnel; he does not accept, and has not been authorized to accept, service in civil suits on behalf of any of the individual Defendants; and he is not otherwise authorized by the GCPD, the Police Chief, or county policy to accept service of civil suits for GCPD or its individual officers. (Docs. 87-1, 89-1 ("Broccoli Aff.")).

Plaintiff, however, has provided sufficient counter evidence. First, the record contains signed returns of service for all of the Defendants [Docs. 78-1, 78-2, 78-3, 78-4, 78-5, 78-6], which constitutes *prima facie* evidence of proper service. *See Davis v. Teachers Ret. Sys. of Ga.*, No. 1:19-CV-1026-SCJ-AJB, 2019 WL 13300665, at *1 (N.D. Ga. Aug. 21) (stating that "the affidavit of service provides prima facie proof of proper service"), *report and recommendation adopted*, 2019 WL 13300934 (N.D. Ga. Sept. 9, 2019); *Olagundoye*, No. 2011 WL 13319509, at *1 (explaining that a signed return of service is prima facie evidence of proper service).

16

Plaintiff also provides the affidavits of Rachel Lindley and Ericka McMillon, the process servers he secured to effectuate service. (Docs. 91-1 ("Lindley Aff."), 91-2 ("McMillon Aff.")).[14] Both process servers attest that they were told by the front office at Gwinnett Police Headquarters that Corporal Broccoli – whose office was at a different location – was the officer who would accept service on behalf of the individual Defendants; that when they each called Corporal Broccoli he confirmed that he was available to accept service, that he did, in fact, accept service and at no point indicated that he was not authorized to do so; and that both Lindley and McMillon were surprised to learn that Corporal Broccoli has denied that he is authorized to accept service in this case. (Lindley Aff. ¶¶4-5, 8-15; McMillon Aff. ¶¶4-12). Ms. Lindley further attests that she was familiar with Corporal Broccoli because she previously had served papers – including subpoenas and summonses – upon Broccoli in court cases involving Gwinnett County Police Officers, including for actions involving excessive force. (Lindley Aff. ¶¶6-7, 15). Although Ms. McMillon was not familiar with Corporal Broccoli, she previously has served papers in cases involving Gwinnett County police officers – including subpoenas and summonses – upon another liaison officer in that same office, and has attached those

_____

[14]    Ms. Lindley was hired to serve Defendants R. Lewis, Johnson, D'Allaird, and later Defendant Howse [Lindley Aff. ¶3], and Ms. McMillon was retained to serve Defendants Stewart, K. Lewis, and GCPD [McMillon Aff. ¶3].

returns of service signed by him. (McMillon Aff. ¶¶6, 12; Docs. 91-3, 91-4). Defendants argue that Plaintiff has not proven that Broccoli is authorized to accept service of process on *these* individual Defendants, but Defendants have not rebutted Plaintiff's prima facie case with strong and convincing evidence. At most, service is a disputed issue at this stage and cannot be determined as a matter of law.

Consequently, after construing all reasonable inferences in Plaintiff's favor as I must, I find that Plaintiff has presented enough evidence to defeat a motion for directed verdict, and Defendants' motion to dismiss for improper service should be denied. *See, e.g., Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008) (finding conflicting evidence regarding service must be construed in the plaintiff's favor); *see also PNC Bank, Nat'l Ass'n v. Lewis Contracting Servs.*, No. 1:23-CV-829-JKL, 2024 WL 4186008, at *3 (N.D. Ga. Aug. 9, 2024) (denying motion to dismiss for improper service because "the evidence in this case is in equipoise – with each side submitting written testimony affirming their position and directly contradicting the other. But with the Court required to construe all evidence in [plaintiff's] favor on the issue, it is clear that [the plaintiff] 'has presented sufficient evidence to defeat a motion for directed verdict on the issue of personal service[.]'") (citations omitted), *appeal filed*, No. 24-12924 (11th Cir. Sept. 9, 2024).

**E.** **Plaintiff's False Arrest and Excessive Force Claims Are Not Barred by _Heck_.**

Defendants next argue that Plaintiff's false arrest and excessive force claims are barred by _Heck v. Humphrey_, 512 U.S. 477, 486-87 (1994), in which the Supreme Court held that in order to recover damages from an unlawful imprisonment, a "§1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" _Id._ at 486-87. Plaintiff responds that it is an open question in this Circuit whether _Heck_ applies to him now that he no longer is in custody on the convictions at issue. Plaintiff is correct. _See Hall v. Merola_, 67 F.4th 1282, 1293 (11th Cir. 2023) ("The parties disagree about whether _Heck_ applies to Hall now that Hall is no longer in custody on his criminal convictions. They spend much of their briefs on the topic – a question that has divided our sister circuits. But we can decide this appeal without resolving this thorny question."); _Teagan v. City of McDonough_, 949 F.3d 670, 678 (11th Cir. 2020) (per curiam) ("[T]here is an open question as to whether _Heck_ applies to situations where, as here, a §1983 plaintiff may no longer seek habeas relief because []he is no longer in custody.").

This exception evolved from Justice Souter's concurring opinion in _Spencer v. Karma_, 523 U.S. 1, 19-21 (1998) (Souter, J., concurring), in which he suggested that the favorable-termination requirement in _Heck_ should not apply to a prisoner no

longer in custody. Although the Eleventh Circuit has not definitively answered the question, some district judges in this Court have found that the correct approach is a narrower exception – that is, "to limit *Heck* to cases in which a non-prisoner had a meaningful opportunity to bring a habeas claim while incarcerated." *Foster v. Lofton*, No. 2:17-CV-278-RWS, 2020 WL 247082, at *14 (N.D. Ga. Jan. 16, 2020); *see also Arnold ex rel. Arnold v. City of Hampton*, No. 1:21-CV-4970-SEG, 2023 WL 3243913, at *11 (N.D. Ga. Mar. 16, 2023) (finding dicta and unpublished opinions in the Eleventh Circuit have suggested that "the narrower exception would not apply the favorable termination requirement to plaintiffs who never 'had a meaningful opportunity to file for habeas relief while incarcerated'") (quoting *Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018)). And the Eleventh Circuit has indicated that such meaningful opportunity is doubtful where the length of imprisonment was "so short that a petition for habeas relief could not have been filed and granted" while the prisoner is in custody. *Teagan*, 949 F.3d 670, 678-79; *see also Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010).

According to Plaintiff, this narrow exception applies in his favor since he was incarcerated for a short time – *i.e.,* sixty days – after the June 10, 2021 arrest, and he did not have a meaningful opportunity to file a habeas petition. Defendants respond that although Plaintiff may have only been incarcerated for sixty days, he was on probation for twelve months and had an opportunity to seek habeas relief but did not

do so.  But "state or federal habeas petitions would not have been able to afford Plaintiff relief while he was still on probation – or so we must assume, making reasonable inferences in Plaintiff's favor." *Arnold*, 2023 WL 3243913, at *11.  At the very least, because there is not a definitive answer to this question, the Court cannot decide as a matter of law that *Heck* bars Plaintiff's false arrest claims connected to the June 10, 2021 arrest.  *See id.* at *12.

It is irrelevant that Plaintiff is no longer in custody for the March 24, 2022 arrest, however, because *Heck* does not apply on other grounds. To that end, the Eleventh Circuit has made clear that the *Heck*-bar narrowly applies, *i.e.,* "only when it is a 'logical necessity' that judgment for the plaintiff in that suit would contradict" the essential facts underlying the conviction.  *Hall*, 67 F.4th at 1292 (citations omitted).  In other words, a claim is barred by *Heck* "'where the allegation in the §1983 claim is a specific one that both necessarily implies the earlier decision is invalid *and* is necessary to the success of the §1983 suit itself.'"  *Id.* at 1292 (quoting *Dixon v. Hodges*, 887 F.3d 1235, 1237 (11th Cir. 2018)) (emphasis in original). Conversely, if "a plaintiff alleges a fact that, if true, would conflict with the earlier punishment, but that fact is not necessary to the success of his §1983 suit, the *Heck* bar does not apply."  *Id.*

On March 24, 2022, Defendants Howse, D'Allaird, and K. Lewis arrested Plaintiff for solicitation, and the remaining charges resulted from Plaintiff's actions

after being told he was arrested therefor. But Plaintiff was not charged with, let alone convicted of, solicitation. (Doc. 89-2). As such, Plaintiff's claim of false arrest for solicitation has nothing to do with, and would not contradict, the validity of his convictions; thus, any such false arrest claim is not *Heck*-barred. *See Henley v. Payne*, 945 F.3d 1320, 1327-28 (11th Cir. 2019) ("*Heck* has no application if the plaintiff has not been convicted of an offense that derives from a common nucleus of operative fact with the offense underlying his §1983 claim."); *McDowell Bey v. Vega*, 588 F. App'x 923, 926 (11th Cir. 2014) (per curiam) (stating that "*Heck* generally does not bar claims relating to an unlawful arrest" and noting that "a judge must compare the §1983 claims and *the crimes of conviction*" to determine if the claims would implicate the validity of the conviction by negating an element of the crime) (emphasis added); *McClish v. Nugent*, 483 F.3d 1231, 1251-52 (11th Cir. 2007) (holding *Heck* did not bar plaintiff's §1983 claim alleging arrest without probable cause since plaintiff was never convicted after completing pretrial intervention program); *cf. Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007) ("[A]s long as it is possible that a §1983 suit would not negate the underlying conviction, then the suit is not *Heck*-barred.").[15]

---

[15]    Defendants cite to this Court's previous decision that *Heck* did, in fact, bar Plaintiff's false arrest claim related to the March 2022 arrest for obstruction; however, at that time the Court was not aware that Plaintiff was arrested for solicitation since he never was charged therewith and the state court docket did not reflect a solicitation charge.

Likewise, as this Court previously found, "it is possible to find excessive force *and* obstruction[.]" (Doc. 5 at 6). Viewing the evidence in the light most favorable to Plaintiff, if the officers did not have probable cause to arrest him for solicitation they also did not have the right to use any force in making the arrest. *See, e.g., Reese v. Herbert*, 527 F.3d 1253, 1273 (11th Cir. 2008) ("In the absence of probable cause, [the police officer] was not justified in using any force against [the plaintiff]."); *Bashir v. Rockdale Cnty., Ga.*, 445 F.3d 1323, 1332 (11th Cir. 2006) ("[I]f an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest."); *see also Adams v. State*, 263 Ga. App. 694 (2003) (stating that an element of misdemeanor obstruction is that obstruction occurs while the officer was in the lawful discharge of his lawful duties and "[a] police officer is not discharging his lawful duty when he arrests an individual without probable cause."). Plaintiff's excessive force claim related to the March 24, 2022 arrest is therefore not subject to dismissal at this juncture.

F.    **Plaintiff's Guilty Plea Did Not Waive His Claims.**

Independent of Defendants' arguments that Plaintiff's claims are *Heck*-barred, Defendants also argue that Plaintiff waived his claims when he entered his *Alford* plea in both cases. In support of that argument Defendants cite to the Eleventh Circuit's holding in *United States v. De La Garza*, 516 F.3d 1266, 11271 (11th Cir.

2008), that "[a] defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."  This argument misses the mark.

Indeed, *De La Garza* specifically involved a defendant's challenge to his convictions and sentences on direct appeal, and that decision also has been applied on collateral review.  *See id.*; *see also Ferguson v. Nail*, No. 1:21-CV-1474-LMM-RGV, 2021 WL 11709431, at *2 (N.D. Ga. Aug. 31) (applying *De La Garza* to habeas challenge raising *Miranda* claim after guilty plea), *report and recommendation adopted*, 2021 WL 11709426 (N.D. Ga. Sept. 28, 2021).  The Supreme Court, however, has held that a defendant who entered a guilty plea is not precluded from seeking damages in a §1983 action for alleged Fourth Amendment violations that were never considered in state court.  *Haring v. Prosise*, 462 U.S. 306, 322-23 (1983); *see also Coney v. Smith*, 738 F.2d 1199, 1199-200 (11th Cir. 1984) (per curiam).

It does not appear from the docket of Plaintiff's criminal proceedings that he raised any pre-plea Fourth Amendment issues therein.  *See* Gwinnett County Clerk Docket Search for Plaintiff's June 10, 2021 arrest, *available at* https:// odyssey.gwinnettcourts.com/Portal/Home/WorkspaceMode?p=0 (last visited Jan. 28, 2025); Gwinnett County Docket Search for Plaintiff's March 24, 2022 arrest,

*available at* https://odyssey.gwinnettcourts.com/Portal/Home/WorkspaceMode ?p=0 (last visited Jan. 28, 2025).  Thus, his *Alford* pleas would not preclude his Fourth Amendment claims here.

## G.  <u>Defendants Are Not Entitled to Qualified Immunity.</u>

Defendants all claim that they are entitled to qualified immunity.  (Doc. 87 at 10-15; Although "qualified immunity is typically addressed at the summary judgment stage of the case," it may be granted on a motion to dismiss where the "complaint fails to allege the violation of a clearly established constitutional right." *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001) (citation omitted).  "While there may be a dispute as to whether the alleged facts are the actual facts," *St. George v. Pinellas Cnty.*, 285 F.3d 1335, 1337 (11th Cir. 2002) (citation omitted), in reviewing a motion to dismiss based on qualified immunity, the Court must accept the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.  *Id.*  And, as discussed previously herein in Section II.A., at this stage the bodycam footage also is viewed in the light most favorable to the plaintiff, as are any ambiguities contained therein. *Jackson*, 97 F.4th at 1350; *Baker*, 67 F.4th at 1277; *Robinson*, 2022 WL 3867584, at *3; *see also Edwards v. Dothan City Schs.*, 82 F.4th 1306, 1311 (11th Cir. 2023) ("When a document considered at the motion to dismiss stage contains ambiguities . . . subject to interpretation, courts should interpret all ambiguities in the plaintiff's favor.").

25

"Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Davila v. Marshall*, 649 F. App'x 977, 981 (11th Cir. 2016) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002)). "At the motion to dismiss stage in the litigation, 'the qualified immunity inquiry and the Rule 12(b)(6) standard become intertwined.'" *Ledea v. Metro-Dade Cnty. Police Dep't*, 681 F. App'x 728, 729 (11th Cir. 2017) (quoting *Keating v. City of Miami*, 598 F.3d 753, 760 (11th Cir. 2010)). If the official demonstrates that he was acting within his discretionary authority, the plaintiff must establish that the official violated a statutory or constitutional right, and that such right was clearly established at the time of the challenged conduct. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). This Court determines "clearly established" law from the United States Supreme Court, the Eleventh Circuit, and the Georgia Supreme Court. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955 (11th Cir. 2003).

The parties do not dispute that all Defendants were acting within their discretionary authority. *See Johnson v. City of Atlanta*, 107 F.4th 1292, 1301 (11th Cir. 2024) ("It is well established that an arrest of someone suspected of violating the law is within the discretionary authority of a police officer."); *Harper v. Perkins*, No. CV 510-047, 2011 WL 13177189, at *2 (S.D. Ga. Aug. 23, 2011) ("There is no

26

question that Defendants were acting within their discretionary authority as law enforcement officers when they carried out their arrest of Plaintiff."). Thus, the burden shifts to Plaintiff to demonstrate that Defendants violated a clearly established constitutional right. *Johnson*, 107 F.4th at 1301. Plaintiff has met that burden.

### 1.   The June 10, 2021 Arrest

Defendants GCDC, Stewart, R. Lewis, and Johnson argue that they are entitled to qualified immunity since the video footage shows that they had probable cause "and certainly arguable probable cause" to arrest Plaintiff for littering.[16] I disagree.

Before a court may disregard the non-moving party's version of the events the video footage must "so utterly discredit" the party's story that "no reasonable jury could have believed" that party. *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023) (internal quotation marks and citations omitted); *see also Martin v. Miami Dade Cnty.*, No. 23-10841, 2024 WL 1434329, at *1 (11th Cir. Apr. 3, 2024) (stating that in connection with bodycam footage provided with a motion to dismiss, "we construe ambiguities in favor of the [plaintiffs] but accept the video's depiction to

---

[16]   As discussed previously in Section I.B., Plaintiff does not oppose dismissal of the excessive force claim against these Defendants; therefore, that argument is moot and the Court will not discuss it.

the extent it 'is clear and obviously contradicts the [plaintiffs'] alleged facts.'") (citations omitted). Construing the facts in the light most favorable to Plaintiff as I must, however, the video footage of this arrest does not "utterly discredit" Plaintiff's version of the facts – that is, that Defendants pre-determined that Plaintiff would go to jail and had to find a violation with which to charge him. Regardless, it is not clear that they had arguable probable cause to arrest Plaintiff for littering.

In the amended complaint, Plaintiff alleges that in the months leading up to his arrest on June 10, 2021, he had been living in the woods beside Wabash Road near Cannonball Court in Gwinnett County, and a few days before June 10 he was given a trespass warning for the property on Cannonball Court. (Am. Compl. ¶¶34-35). At some point within that timeframe Plaintiff had a discussion about his personal belongings with a Code Enforcement officer, who provided Plaintiff with black trash bags so that he could separate his belongings and discard any trash at the curb for the garbage collectors to pick up. (*Id.* ¶¶35-37). According to Plaintiff, he intended to relocate from the Wabash Road area to another location and planned to put some of his belongings into a storage unit. (*Id.* ¶38). Plaintiff was following that directive and was in the process of separating trash to be thrown away from items he would keep and move when Defendant Stewart arrived on June 10. (*Id.* ¶39).

The bodycam footage shows that upon Stewart's arrival she was told by officers at the scene that Plaintiff had received a trespass warning and was still there.[17] (Stewart BCF at 01:54-02:10). When Stewart asked Plaintiff, he told her about the trespass warning, his impending move, and his intent to move some items into storage. (*Id.* at 02:52). While Plaintiff was looking for his copy, Defendant Stewart was told by an officer on the phone that the trespass warning was issued for Plaintiff to stay away from all of Cannonball Court. (*Id.* at 06:10). Plaintiff, however, was on Wabash Drive and not Cannonball Court, and it became clear that Plaintiff could not have been violating the trespass warning. (*Id.* at 06:10-:13; 13:06-:09).

Once R. Lewis arrived, Stewart turned off the audio on her bodycam; however, Lewis captured the first part of their conversation where Stewart told him that there is an urban camping ordinance with which they could charge Plaintiff "if all else fails." (*Id.* at 10:03-12:27; R. Lewis BCF at 01:04-:23). Both Lewis and Stewart agreed that the trespassing charge could not hold up since Plaintiff was on Wabash Drive and because neither had ever heard of a trespass charge based on a warning to stay away from an entire street. (R. Lewis BCF at 01:45-:47). Lewis

---

[17]    It appears from the footage that those officers were with the Department of Corrections. (Stewart BCF at 1:31).

then turned off the audio on his bodycam and they continued their discussion with no sound. (*Id.* at 1:47).

Throughout all of the video footage, Stewart and Lewis engaged in numerous conversations lasting several minutes with the audio turned off. (*See* Stewart BCF at 10:43-12:27, 19:51-21:40, 22:27-26:13; R. Lewis BCF at 01:56-0:2:44, 09:54-17:16). In between those large gaps, it is clear that they conducted research and discussed various potential charges for which they could take Plaintiff to jail – none of which fit the facts – ultimately waiting until Defendant Johnson arrived to make the decision. (*See, e.g.,* Stewart BCF at 06:10-:13, 13:06-:09; R. Lewis BCF at 1:04-:23). Both Stewart and Lewis had the audio off on their bodycams when Defendant Johnson arrived, Johnson's audio captured the beginning of their conversation where Stewart told him about their research and that trespassing and urban camping would not apply, and then some discussion followed about with what they could charge Plaintiff before Johnson also turned his audio off. (Johnson BCF at 0:54-2:20). Ultimately they decided to charge Plaintiff with littering.[18]

"Littering" is defined as rubbish, refuse, junk, or other waste material that is "*discarded or abandoned*." O.C.G.A. §16-7-42 (emphasis added). When Plaintiff

---

[18]   As noted by Plaintiff, at first it appears that Defendant Stewart began to arrest Plaintiff for trespassing, but once Plaintiff explained that he was not on the property for which he received the warning Stewart told him he was going to jail for littering. (*See* Stewart BCF at 26:14-:45).

asked Defendant Stewart what constituted the litter, she told him that it was "all of [his] stuff." (Stewart BCF at 28:50-:54). Plaintiff responded that he had "not left it here" and was, in fact, cleaning up, and in much of the video footage he can be seen doing what appears to be just that. (*See, e.g.,* Stewart BCF at 29:07-:09).

This Court must credit Plaintiff's version of the facts because the video is not "obviously contradictory" – especially given the lack of audio during the majority of Defendants' discussions about violations with which to charge Plaintiff. *See, e.g., Baker*, 67 F.4th at 1277 (stating that where the video contains a visual representation of what happened but does not contain crucial audio, courts must construe all ambiguities in the video footage in favor of the plaintiff); *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (per curiam) ("[T]he video is often not obviously contradictory because it fails to convey spoken words or tone[.] . . ."). To the extent Defendants argue that the arrest was justified – the bases therefor are "hotly disputed questions of fact" and cannot be decided as a matter of law at this motion to dismiss stage. *See Andrews*, 729 F. App'x at 809 n.3 (noting that on a Rule 12(b)(6) motion courts must accept the plaintiff's version of the facts, even if that version is "hotly disputed."). Accordingly, Defendants' motion to dismiss on qualified immunity grounds should be denied. *See Martin*, 2024 WL 1434329, at *4-5; *Andrews*, 729 F. App'x at 810.

2.    <u>The March 24, 2022 Arrest</u>

Defendants Howse, D'Allaird, and K. Lewis also argue that they are entitled to qualified immunity because the video footage shows that they had probable cause "and certainly arguable probable cause" to arrest Plaintiff for solicitation. Again, I disagree. If nothing more, the video supports, rather than contradicts, Plaintiff's allegations. Construing the facts in the light most favorable to Plaintiff as I must, even more so than the earlier arrest the video footage shows that Defendants decided to take Plaintiff to jail to get him off of the streets and endeavored to find the means – that is, some type of criminal charge – to do so.

The bodycam footage shows that when Defendant D'Allaird first encountered Plaintiff he was standing on the side of the highway in front of a small fire, D'Allaird asked Plaintiff what he was doing, and Plaintiff responded that he was trying to get his stuff out of the woods. (D'Allaird BCF at 0:51). Plaintiff answered all of Defendant D'Allaird's questions and told D'Allaird that he had made the small fire to keep himself warm. (*Id.* at 0:1:42). Once D'Allaird learned Plaintiff's name, D'Allaird spoke with someone on the phone with the police department, and was told that another police officer had dealt with Plaintiff extensively. (*Id.* at 09:01-:05). That police officer also told D'Allaird that although all of Plaintiff's criminal history was minor, "it would be good" if they "could take him to jail and get him out of there." (*Id.* at 09:05-09:26). Thereafter, three people from the fire department

arrived and D'Allaird conveyed the previous conversation to the firemen, adding that he thought that they were going to "take him in again." (*Id.* at 10:25-12:52).

Soon after that conversation Defendant Howse arrived, asked D'Allaird how big the fire was, and when D'Allaird told him it was not very big[19] Howse stated, "I think I'll just take him in for DC [disorderly conduct]." (*Id.* at 14:15-:54; Howse BCF at 0:36-0:50). D'Allaird then mentioned that "it looked like" Plaintiff was trying to solicit cleaning windows since he had a squeegee and some window cleaner. (D'Allaird BCF at 14:52-15:09; Howse BCF at 0:36-0:52). After a few minutes, Defendant Howse stated that he was going to see if he "can find something more applicable" to Plaintiff other than disorderly conduct. (D'Allaird BCF at 16:05-:06; Howse BCF at 1:36-:41).

From that point on, both Defendants conducted research in their patrol cars for an extensive amount of time to figure out with what they could charge Plaintiff that would enable them to take him to jail. (Howse BCF at 02:36-12:47). Based on that lengthy amount of time and the various conversations they had with each other and other officers, they ultimately decided that solicitation would be "the easiest" to "push." (*See, e.g.,* Howse BCF at 08:50 (Howse telling D'Allaird, "hey, I think I found one" and discussing a potential charge), at 09:46-48 (Howse telling an officer

---

[19]    At one point D'Allaird's bodycam video shows one of the firemen putting the fire out simply by stomping on it. (*Id.* at 13:36-14:00).

on the phone that, "we looked up arson, it doesn't fit" and at 09:55-58 that D'Allaird "talked to one of the arson investigators and he said there was nothing we can really push on him") at 10:03 (D'Allaird telling Howse, "I think solicitation is going to be the easiest"), at 10:54- 11:06 (officer on phone asking Howse, "can you get him for solicitation?," Howse responding, "we can probably push it, yeah," after which D'Allaird states, "I think that's going to be the easiest one").  Upon careful review, accepting the alleged facts as true and construing them in the light most favorable to Plaintiff, the video of Plaintiff's arrest on March 24, 2022 does not "so utterly discredit[]" Plaintiff's allegations such that that no reasonable jury would believe his version of the events.  Put another way, I cannot say as a matter of law at this stage of the proceedings that Defendants did, in fact, have arguable probable cause to arrest Plaintiff.

As a result, Defendants are not entitled to qualified immunity.  *See Martin v. Miami Dade Cnty.*, No . 23-10841, 2024 WL 1434329, at *4-5 (11th Cir. Apr. 3, 2024) (affirming denial of qualified immunity for false arrest on motion to dismiss since "[g]iven the amended complaint and the body camera video together, the Officers did not have probable cause" for the arrest); *see also Andrews v. Scott*, 729 F. App'x 804, 810 (11th Cir. 2018) (affirming denial of motion to dismiss false arrest

claim on qualified immunity grounds because plaintiff alleged that the officer made clear he did not believe there was a basis for her arrest but arrested her anyway).[20]

**H.    Plaintiff's Claims for Deprivation of Property Under §1983 Should Survive the Motion to Dismiss.**[21]

To the degree that Plaintiff raises a §1983 claim for deprivation of property under the Fourth Amendment, Defendants argue that Plaintiff fails to allege that the actual actions taken by Defendants constituted a seizure since they never touched Plaintiff's alleged property or affirmatively took possession thereof.  Plaintiff argues that by failing to secure Plaintiff's personal property, Defendants necessarily abandoned or destroyed it.[22]

---

[20]    Although I find that the false arrest claim survives a motion to dismiss, I do not evaluate whether qualified immunity applies to Defendants on the excessive force claim since that claim necessarily would be subsumed into the false arrest.  It would be premature to dismiss the excessive force claim at this stage, however, because Plaintiff alternatively raised excessive force as a separate and discrete claim should the arrest be considered lawful.

[21]    In the amended complaint Plaintiff also raised a procedural due process claim in connection with each arrest.  (*See* Doc. 75 ¶¶139, 184).  In the motions to dismiss Defendants state that to the degree Plaintiff raises any such claim, it fails because Georgia provides an adequate post-deprivation remedy.  (Doc. 80 at 12, n.1; Doc. 87 at 16 n.1).  Plaintiff does not address this issue in his response; however, I agree with Defendants that a procedural due process claim cannot withstand a motion to dismiss.  *See Byrd v. Stewart*, 811 F.2d 554, 554-55 & n.1 (11th Cir. 1987) (per curiam) (finding plaintiff's procedural due process claim for loss or deprivation of property failed because Georgia provides an adequate post-deprivation remedy).

[22]    In their original briefs, Defendants appear to challenge whether Plaintiff had any rights to the property at issue.  Because Plaintiff's allegations must be accepted as true, however, I must accept that the property did, in fact, belong to him.

"A seizure occurs when 'there is some meaningful *interference* with an individual's possessory interest in personal property.'" *Bevan v. Lee Cnty. SO*, 213 F. App'x 824, 829 (11th Cir. 2007) (per curiam) (emphasis added) (quoting jury instruction and finding no error of law). In the amended complaint, Plaintiff alleges, *inter alia*, that Defendants abandoned or destroyed Plaintiff's property after both false arrests. (Am. Compl. ¶¶144-47, 188-89). Accepting these allegations as true, at the motion to dismiss stage I cannot find beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief.

## I.    **Official Immunity Does Not Apply at This Stage of the Proceedings.**

Finally, Defendants argue that they are entitled to official immunity with regard to Plaintiff's state law trespass to property claim. "In Georgia, 'a public officer or employee may be personally liable only for ministerial acts negligently performed or discretionary acts performed with malice or intent to injure.'" *Coons v. Gwinnett Cnty.*, No. 1:14-cv-2284-CAP, 2015 WL 12864233, at *8 (N.D. Ga. Nov. 12, 2015) (citation omitted); *see also Murphy v. Bajjani*, 282 Ga. 197, 203 (2007) ("A public agent's acts do not have official immunity if they are discretionary acts committed 'with actual malice or with intent to cause injury.'") (quoting Ga. Const. Art. I., Sec. II, Para. IX(d)).

I previously found that Plaintiff's allegations – *i.e.,* that Defendants arrested him on false charges and deliberately left his property abandoned on the side of the

road knowing he would be deprived of that property – sufficiently alleged malice, that is, a deliberate intention to cause Plaintiff harm. (Doc. 23 at 5-6). I agree with Plaintiff that nothing has changed since that decision, as Plaintiff raises the same allegations in the amended complaint [Doc. 75 ¶¶149-55, 193-99] and, construing the allegations in Plaintiff's favor, Defendants' motion to dismiss Plaintiff's state law property claim should be denied.

### III.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Defendants' motions to dismiss [Docs. 80, 87, 89] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's excessive force claim against Defendants Stewart, R. Lewis, and Johnson be **DISMISSED**.

**IT IS FURTHER RECOMMENDED** that if the District Judge adopts these recommendations, Plaintiff be directed to file an amended complaint to change GCPD to Gwinnett County, Georgia.

The parties are **ADVISED** that prisoner civil rights cases are automatically assigned to a zero-month discovery track. *See* LR 41.3, NDGa. Should the District Court adopt this Report and Recommendation, the parties shall have thirty days from the date of that order to file a motion for discovery.

**SO RECOMMENDED** this 29th day of January, 2025.

_____
JOHN K. LARKINS III
UNITED STATES MAGISTRATE JUDGE