## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KIRK MICHAEL FIELDS,

     *Plaintiff,*

v.

GWINNETT COUNTY
POLICE DEPARTMENT, *et al.,*

     *Defendants.*

CIVIL ACTION FILE
NO. 1:22-CV-3684-LMM-JKL

## PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE NON-FINAL REPORT & RECOMMENDATION

# TABLE OF CONTENTS [1]

**ARGUMENT** ..................................................................................... **3**

    **A.  The Court Should Overrule Defendants' Objection about the Claims against Defendant Gwinnett County** ........................................... **3**

    **B.  The Court Should Overrule Defendants' Improper Service Objection** ................................................................................... **5**

        1.  Defendants—Not Mr. Fields—Failed to Meet Their Burden .......... 5

        2.  Defendants Do Not Show that Dismissal is the Proper Remedy ............................................................................. 7

    **C.  The Court Should Overrule Defendants' *Heck* Objections** ................... **8**

        1.  *Heck* Does Not Bar the 2021 Claims Because Mr. Fields Did Not Have a Meaningful Opportunity to Contest His Claims via Habeas .................................................................... 8

        2.  *Heck* Does Not Bar the 2022 Claims Because Liability Here Would Not "Necessarily Imply the Invalidity" of his Obstruction Charges ........................................................ 11

        3.  Mr. Fields's *Pro Se* State Habeas Petition Does Not Invalidate his 2022 Claims under *Heck* ............................... 15

    **D.  The Court Should Overrule Defendants' Plea Waiver Objection** ....... **17**

---

[1] Page numbers begin at 3 to avoid confusion with the ECF numbering. Thus, though the brief goes to page number 27, that is only the twenty-fifth page.

**E. The Court Should Overrule Defendants' Qualified Immunity Objections** ................................................................**20**

    1. Defendants Did Not Move to Dismiss the 2021 False Arrest Claim on Qualified Immunity Grounds .........................................20

    2. Alternatively, the 2021 Defendants Violated Clearly-Established Law by Arresting Mr. Fields Without Arguable Probable Cause ..................................................................................20

    3. The 2022 Defendants Violated Clearly-Established Law by Arresting Mr. Fields Without Arguable Probable Cause and Using Excessive Force Against Him .........................................22

**F. The Court Should Overrule Defendants' Property Claim Objection** ..................................................................................**24**

**G. The Court Should Overrule Defendants' Conclusory State Law Claim Objection** .............................................................**26**

**CONCLUSION** .......................................................................................**27**

## ARGUMENT [2]

This Court has twice affirmed the Magistrate Judge's findings that Mr. Fields stated cognizable claims. [Dkts. 5, 8; Dkts. 23, 27]. In his third review, the Magistrate Judge correctly recommended that this Court deny Defendants' Motions, except where Mr. Fields has consented to dismissal. [Dkt. 100]. This Court should affirm the Magistrate Judge's conclusions for a third time.

Defendants raise seven objections to the R&R. [Dkt. 106]. They are addressed in turn below, using the same lettering as Defendants for ease of review.[3] None warrants departing from the Magistrate Judge's recommendation.

### A.  The Court Should Overrule Defendants' Objection about the Claims against Defendant Gwinnett County

Defendant Gwinnett County (currently incorrectly styled as Gwinnett County Police Department) does not object to or challenge the conclusion that the Court should permit Mr. Fields to correct the misnomer as outlined in Mr. Fields's Response. [*Ref.* Dkt.  92 at 14–16]. Instead, it objects only to the Magistrate Judge's conclusion that such an amendment wouldn't be futile under *Monell*, claiming that Mr. Fields has not stated a plausible claim against the County.

---

[2] Unless otherwise noted, all internal citations and alterations are omitted and all emphasis is added.

[3] Where possible, Mr. Fields refers to his prior Responses [Dkts. 91, 92] and Surreply [Dkt. 97] to avoid repetition, using a "*Ref.*" citation.

Pertinent here, to prevail on a *Monell* claim, a plaintiff must prove that "the municipality had a custom or policy that constituted deliberate indifference to that constitutional right." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The Magistrate Judge correctly noted that Mr. Fields has properly *alleged* Gwinnett County's customs (*i.e.*, unofficial policies) related to arresting homeless individuals, using force for arrests (including with tasers), and abandoning or destroying property. [Dkt. 100 at 11]. The Magistrate Judge then correctly concluded those allegations survive a Motion to Dismiss.

Defendants object that Mr. Fields's allegations are devoid of "*factual support.*" [Dkt. 106 at 6]. But factual support is not the standard at this stage. Alleging these unofficial policies suffices to state a plausible claim because they "permit the reasonable inference that [the County] is liable for the misconduct alleged." *Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (11th Cir. 2016).

Defendants cite *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994), but admit that case *did not involve a motion to dismiss.* (So too with *McDowell*, above.) That gives the game away. The Eleventh Circuit's basic ruling in *Church* was that "the record in this case contains no evidence" of policies sufficient to support the claim. "Evidence" is mentioned over twenty times. Here, the parties have not yet engaged in discovery, and Mr. Fields is not required to prove the policies and customs that he has plausibly alleged.

And in any event, Mr. Fields has not alleged a one-off occurrence. His two unlawful arrests—both of which involved officers' pre-determined decision to arrest him, and the discussions among multiple officers, including supervisors, to that effect—further reinforce the plausibility of the allegations against the County. As the Magistrate Judge correctly concluded, nothing in the video evidence contradicts those allegations as a matter of law. [Dkt. 100 at 29–35].

Accordingly, amending the Complaint is not futile. Defendants' first objection should be overruled, and Mr. Fields should be permitted to amend the complaint to correct the misnomer.[4]

## B.  The Court Should Overrule Defendants' Improper Service Objection

### 1.  Defendants—Not Mr. Fields—Failed to Meet Their Burden

As they did before the Magistrate Judge, Defendants fundamentally misunderstand the shifting burden of proof for their 12(b)(5) improper service motion. When the plaintiff has provided prima facie evidence supporting service, "the burden shifts back to the defendant to provide *strong and convincing evidence* to overcome the presumption of valid service." *Loughlin v. Amerisave Mortg. Corp.*, No. 1:14-CV-3497-LMM-LTW, 2015 WL 13709947, at *3 (N.D. Ga. July 27, 2015), *R&R*

---

[4] As to the state law trespass claims, though the (First) Amended Complaint mentions "The Defendants" generally, Mr. Fields does not contest that the County would be entitled to sovereign immunity and states that he is only advancing those claims against the Defendant Officers.

*adopted*, 2015 WL 13709966 (N.D. Ga. Aug. 24, 2015). Defendants do not argue that they provided "strong and convincing" evidence. Instead, they attack only Mr. Fields's *prima facie* case.

But Mr. Fields comfortably clears the *prima facie* hurdle, as his Response shows. [*Ref.* Dkt. 91 at 4–5]. Briefly stated, "[t]he Return and Affidavit are sufficient to establish prima facie evidence." *Loughlin*, 2015 WL 13709947, at *3; *see also Aucoin v. Connell*, 209 F. App'x 891, 894 (11th Cir. 2006) ("return of service provides prima facie proof of proper service") [cited by Magistrate Judge, Dkt. 100 at 15]. So the *initial* affidavits of service, which stated that Corporal Broccoli accepted service on the officers' behalf, meet Mr. Fields's initial burden to show he was in fact authorized by the individual officers to do so.

Defendants rely on *Melton v. Wiley*, 262 F. App'x 921, 922 (11th Cir. 2008), but the district court order affirmed there turned not on the plaintiff's *prima facie* case, but on the defendant's contrary evidence. *See Melton v. Wiley*, No. 7:05-CV-2-HL, 2007 WL 315343, at *2 (M.D. Ga. Jan. 31, 2007). To be sure, the district judge—reviewed for an abuse of discretion—did not expressly outline the burden-shifting framework and only cursorily discussed the evidence. But the ruling necessarily centers on the defendant's *own* affidavit (not the liaison's), to which the plaintiff "provided no additional evidence." *Id.* at *2. Thus, the defendant's evidence was sufficiently "strong and convincing" to rebut the prima facie case.

Mr. Fields's Response explains at length why Defendants don't meet their burden. [*Ref.* Dkt. 91 at 5–7]. Unlike in *Melton*, they introduced only a bare bones affidavit from the liaison. Unlike in *Melton*, Mr. Fields provided *additional* evidence beyond the initial affidavits. The Magistrate Judge correctly noted that, if the evidence conflicts, the Court must draw inferences in Mr. Fields's favor; he then concluded that Defendants had not met their burden. [Dkt. 100 at 15, 18].

Defendants make no attempt now to argue why their evidence is sufficiently "strong and convincing." Accordingly, their objection should be overruled.

### 2. Defendants Do Not Show that Dismissal is the Proper Remedy

Even if Defendants had met their burden, that alone would not justify the remedy they seek, *i.e.*, dismissal. The proper remedy is to extend the service deadline, as Mr. Fields's Response outlines. [*Ref.* Dkt. 91 at 7–10]. Three alternative grounds independently support that conclusion. [*Id.*].

Defendants' objection completely fails to address that remedy. They never explain why the Court should dismiss the case instead of extending the deadline. Even before the Magistrate Judge, Defendants addressed only one of the three supporting reasons, and that only in passing. [Dkt. 95 at 5]. That does not suffice.

Notably, Mr. Fields's extensive presentation of this issue contrasts sharply with the plaintiff in *Melton*, who "failed to address an extension for time to perfect service." 2007 WL 315343, at *3. So even under *Melton*, this Court's discretionary

review offers wide latitude to avoid dismissal. Particularly now because Mr. Fields will already need to amend the complaint to correct the misnomer, *see Section A*, above, an extended service deadline would not disrupt the case in any way.

Accordingly, for the separate reason that Defendants fail to demonstrate the need for dismissal, their objection should be overruled.

## C.  The Court Should Overrule Defendants' *Heck* Objections

Under *Heck*, the court must dismiss the complaint if success on the claims would "necessarily imply the prisoner's state conviction was invalid." *Sconiers v. Lockhart*, 946 F.3d 1256, 1268 (11th Cir. 2020). The Magistrate Judge concluded that *Heck* does not apply to either the 2021 or 2022 claims, albeit for different reasons. Defendants raise three objections, which are addressed in turn below.

### 1.  *Heck* Does Not Bar the 2021 Claims Because Mr. Fields Did Not Have a Meaningful Opportunity to Contest His Claims via Habeas

Mr. Fields's Response explains why *Heck* does not apply to his 2021 arrest for littering. [*Ref.* Dkt. 92 at 4–7]. Briefly stated, the *Heck* Court did not decide whether to bar a § 1983 suit when the incarceration is so short that "a petition for habeas relief could not have been filed and granted while Plaintiff was unlawfully in custody." *Morrow v. Fed. Bureau of Prisons*, 610 F.3d 1271, 1272 (11th Cir. 2010). Courts and Circuits remain split on that issue, and Defendants concede that there is no binding authority resolving whether *Heck* applies in these circumstances. As Judge Geraghty recently explained, the Eleventh Circuit has "given conflicting

indications" about how to resolve the issue in "in dicta and unpublished opinions." *Arnold on behalf of Arnold v. City of Hampton*, No. 1:21-CV-4970-SEG, 2023 WL 3243913, at *11 (N.D. Ga. Mar. 16, 2023).

The Magistrate Judge sided with other courts in this Circuit to conclude that *Heck* doesn't preclude Mr. Fields's claims because he was incarcerated for just 60 days and thus did not have "a meaningful opportunity to file for habeas relief while incarcerated." [Dkt. 100 at 19–21 (quoting *Arnold*, 2023 WL 3243913, at *11)]. Defendants object that the Court should not look to the 60-day incarceration, but instead to the year of Mr. Fields's probation. They contend *first* that "in custody" is broader than "incarcerated" for *Heck* purposes and *second* that Mr. Fields in fact had a "meaningful opportunity" to challenge his 2021 claims via habeas during his probation. [Dkt. 106 at 14–16]. Neither is right.

*First*, Defendants contend that limiting *Heck* to cases where the prisoner is incarcerated "diverges from the weight of the case law in this Circuit . . . ." [Dkt. 106 at 14]. Not so. The Magistrate Judge was in line with the general view—as Judge Geraghty said, "the Circuit is *(relatively) more committed*" to "not apply[ing] the favorable termination requirement to plaintiffs who never had a meaningful opportunity to file for habeas relief *while incarcerated*." *Arnold,* 2023 WL 3243913, at *11 (*citing See Topa v. Melendez*, 739 F. App'x 516, 519 n.2 (11th Cir. 2018)); *see also Foster v. Lofton*, No. 2:17-CV-278-RWS, 2020 WL 247082, at *14 (N.D. Ga. Jan. 16,

2020) ("the correct approach is to limit *Heck* to cases in which a non-prisoner had a meaningful opportunity to bring a habeas claim *while incarcerated*."); *Jones v. Grady Cnty.*, No. 1:13-CV-156 WLS, 2014 WL 3965955, at *6 (M.D. Ga. Aug. 13, 2014) (*Heck*'s "concern was that prisoners could avoid the strictures of habeas but nonetheless challenge the duration or fact of *their physical confinement*.").

Defendants' only contrary authority is *Butler v. Georgia*, No. 22-10291, 2022 WL 17484910, at *1 (11th Cir. Dec. 7, 2022)—one of the "unpublished opinions" giving "conflicting indications" that Judge Geraghty referenced. *Arnold*, 2023 WL 3243913, at *11. That case, standing alone, does not amount to the "weight of the case law" in this Circuit. The Magistrate Judge fully considered this Circuit's precedents and ruled accordingly (and correctly). That resolves this issue.

*Second*, even if the Court credited Defendants' view that "in custody" covered Mr. Fields's year of probation, rather than only his incarceration, Defendants still fail to explain why that would amount to a "meaningful opportunity." In fact, they *do not cite a single case discussing* what is a meaningful opportunity.

*Butler*—their only cited *Heck* case—did not address meaningful opportunity *at all*, and it involved very different facts—a plaintiff who was *currently serving* a sentence of "*twenty years*, with eight years in confinement, later was reduced to *six years in confinement*" at the time of filing. 2022 WL 17484910 at *1. The lawsuit challenged only the sentencing itself (based on his First Offender status) and did not

10

allege any wrongdoing by the defendants; as the court noted, "Butler's claims boil down to a collateral attack on the sentence imposed." *Id.* at *3. Simply put, that case does not speak to Mr. Fields's situation at all.

Because the law supports neither of their arguments, Defendants' objection cannot be sustained. Nor should it. Beyond being wrong on the law, applying *Heck* to bar Mr. Fields's claims would be bad policy, as his Response illustrates. [*Ref.* Dkt. 92 at 6–7]. Mr. Fields's arrest was plainly unlawful, but for all practical purposes, had no choice but to plead guilty to avoid an indefinite jail term. Against that backdrop, to hold that *Heck* bars his § 1983 claims would remove Mr. Fields's *only* remedy for his unlawful arrest *and* would immunize law enforcement misconduct. That should not be the case. Defendants' objection should be overruled.

## 2. *Heck* Does Not Bar the 2022 Claims Because Liability Would Not "Necessarily Imply the Invalidity" of his Obstruction Charges

For a different reason, *Heck* does not bar the 2022 claims either. Again, *Heck* bars a § 1983 claim that would "necessarily imply the prisoner's state conviction was invalid." *Sconiers*, 946 F.3d at 1268. "But when the facts required for a prisoner to prove his § 1983 case do not *necessarily logically contradict* the essential facts underlying the prisoner's conviction, *Heck* does not bar the § 1983 action from proceeding." *Id.* (citing *Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007)). For Mr. Fields, that means his § 1983 claims for false arrest or excessive force would have to contradict the facts underlying his obstruction conviction. They do not.

**False Arrest.** The Magistrate Judge correctly concluded that *Heck* does not bar claims for Mr. Fields's 2022 arrest. [Dkt. 100 at 21]. Mr. Fields's false arrest claim centers on a different offense (solicitation) than that for which he was convicted (obstruction)—something Defendants concede.

Defendants object that *Heck* nevertheless controls because the obstruction statute, O.C.G.A. § 16-10-24(b), outlaws resisting an officer "in the lawful discharge of his or her official duties." They seize on this language to argue that *Heck* controls based on the Eleventh Circuit's ruling in *Dyer*. To be sure, *Dyer* acknowledged that *Heck* bars § 1983 claims that would negate *an element* of the underlying offense. 488 F.3d at 879. Defendants contend that a Georgia obstruction conviction requires "proof of the underlying lawful arrest" in contrast to the Florida crime of resisting arrest at issue in *Dyer*. [Dkt. 106 at 18]. They take that to mean that, for the Georgia obstruction conviction, the "validity of the underlying *arrest* for solicitation is a logical necessity." [*Id*.]. Not so.

Drawing a contrast to a crime's elements, the *Dyer* court also explained that *Heck* is not an obstacle where "a successful § 1983 suit would establish what would have been an *affirmative defense* to the underlying offense." 488 F.3d at 879. Unlike with the state's burden to prove the crime's elements, the availability of a possible affirmative defense does not "*necessarily logically contradict*" the conviction.

And under Georgia law, the right to resist an unlawful arrest is an *affirmative*

12

*defense* to obstruction, not an element of the crime itself. That is what the Supreme Court of Georgia explained in *Glenn v. State*, 310 Ga. 11, 30 (2020), a case Defendants cite but misunderstand. Defendants read *Glenn* to mean that a lawful *arrest* is an *element* of obstruction. But that is not what *Glenn* stands for. Instead, Glenn merely confirmed that the pre-existing common law defense for resisting an unlawful arrest—a form of "justification"—remained intact and was not abrogated by any Georgia statute.

Defendants contend that it would be logically impossible for the arrest to be unlawful and the obstruction charge to be valid. Not so. The *Glenn* Court also noted that establishing the defense of resisting an unlawful arrest also requires an additional element—the resistance must be carried out with "proportionate force." *Id.* at 30. That means that a criminal defendant *could be convicted for obstruction despite unlawful police action* if he resisted with non-proportionate force.

The decision in *Johnson v. State*, 363 Ga. App. 12 (2022), proves that point. There, the defendant challenged convictions for misdemeanor obstruction (for not stopping when told) and aggravated assault (for attacking officers with a knife), arguing that the officer lacked reasonable suspicion. The court reversed the misdemeanor conviction, concluding that "the deputy was not acting within the lawful discharge of his duties when he commanded Johnson to stop." *Id.* at 18. However, that unlawfulness did not undermine his conviction for aggravated assault

because he did not use proportionate force in resisting. *Id.* at 19 (citing *Glenn*).

That is why a lawful arrest is not a "logical necessity." Mr. Fields *could* have been falsely and forcibly arrested but resisted (by kicking officer Howse in the groin, spitting in his eye, and twisting his arm) with force that was not "proportionate" under the circumstances, such that his defense would not prevail. That would support his *Alford* plea or a hypothetical Georgia jury verdict.

Ultimately, this Court need not resolve that hypothetical question. For the *Heck* inquiry, the only question is whether "the facts required for a prisoner to prove his § 1983 case *do not necessarily logically contradict* the essential facts underlying the prisoner's conviction." *Sconiers*, 946 F.3d at 1268. Because there is a possibility they do not, the inquiry ends. Accordingly, Defendants' objection regarding the false arrest claim should be overruled.

**Excessive Force**. Defendants, in their passing argument about excessive force "during the timeframe of actually making the arrest," do not explain whether their argument applies to the alternative excessive force claim or to the false arrest claim (for which the force would also be relevant for damages). [Dkt. 106 at 19]. So it is unclear whether they are objecting to the excessive force claim at all.

If they are, Defendants ignore the Magistrate Judge's prior recommendation—to which Defendant Howse did not object—and this Court's holding that the excessive force claim for the 2022 incident could proceed. [*See* Dkt. 8 at 2; Dkt.

5 at 6]. Indeed, Defendants do not address that prior ruling at all.

Instead, to make their case, they cite only a single line from *Hensley v. Langford*, No. 4:19-CV-267-TWT, 2022 WL 3718506 (N.D. Ga. Aug. 29, 2022). [Dkt. 106 at 19–20]. Mr. Fields's Response explains why that case does not overcome this Court's prior decision and the binding Eleventh Circuit precedents previously cited by this Court. [*Ref.* Dkt. 91 at 11–13 (citing Dkt. 5 at 6; *Sconiers*, 946 F.3d at 1268–69; *Hadley v. Gutierrez*, 526 F.3d 1324, 1327 (11th Cir. 2008))]. Accordingly, any objection to the excessive force claim should also be overruled.

### 3. Mr. Fields's *Pro Se* State Habeas Petition Does Not Invalidate his 2022 Claims under *Heck*

Because *Heck* doesn't apply on other grounds, the availability of habeas as a remedy is beside the point. Despite Mr. Fields raising the argument in his Response, [*ref.* Dkt. 91 at 11–12], the Magistrate Judge chose not to reach the separate question of whether *Heck* would apply due to Mr. Fields no longer being in custody. [Dkt. 100 at 21]. If the Court agrees, Defendants new objection—related to Mr. Fields's recent *pro se* habeas application filed in Gwinnett Superior Court—is totally irrelevant.

But, even if *Heck* controlled, Defendants' evidence would not warrant this Court granting a *motion to dismiss* based on the well-pled *allegations*.

Recall that, Circuit authority requires Defendants to show that Mr. Fields was still "in custody" related to the 2022 conviction for *Heck* to control. As

established by the Complaint's well-pled allegations, Mr. Fields is no longer incarcerated for that crime. [*See* Dkt. 75 ¶ 3]. If the Court agrees with Judges Geraghty, Story, and Sands that habeas is limited to "plaintiffs who never had a meaningful opportunity to file for habeas relief *while incarcerated*," the inquiry ends. *Arnold*, 2023 WL 3243913, at *11.

Defendants argue the habeas application shows that "Plaintiff is currently incarcerated on revoked probation for the March 24, 2022 arrest." [Dkt. 106 at 20]. Beyond improperly going beyond the pleadings, the application neither establishes that he is incarcerated for probation revocation (as opposed to the unrelated crimes as alleged in the Complaint) nor indicates that habeas is *in fact* available to Mr. Fields. As the Court well knows, filing a petition is not equivalent to stating a valid claim. Indeed, it appears from the face of the application that someone in the clerk's office has stamped "Error" across it.

Moreover, Defendants' reliance on that habeas application does not comport with their sole cited case, *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006). *Hutcherson* was a death penalty case. If *federal* habeas is available to a death penalty defendant, that bars a § 1983 claim because the prisoner must comply with the detailed requirements of the Antiterrorism and Effective Death Penalty Act. *Id.* at 752. That case has no bearing here, and Defendants offer no authority for the ruling they seek. Accordingly, Defendants' objection should be overruled.

### D. The Court Should Overrule Defendants' Plea Waiver Objection

For their waiver argument, Defendants rely on inapplicable cases about direct appeal (*De La Garza*) or habeas (*Bussey*). But they do not cite *any* binding case applying such a waiver to bar a 1983 claim.[5] And for good reason. In *Haring v. Prosise*—the case correctly cited by the Magistrate Judge—the Supreme Court expressly rejected the same waiver argument Defendants make: "We similarly reject the view, argued by petitioners and accepted by the District Court, that by pleading guilty Prosise 'waived' any claim involving an antecedent Fourth Amendment violation." 462 U.S. 306, 319 (1983).

The Court dispensed with two bases for such a waiver cited by the courts below: *first*, it distinguished a § 1983 claim from a federal *habeas* claim, concluding that the rule barring a state criminal defendant who pleaded guilty from making a federal habeas claim does not apply to a § 1983 lawsuit:

---

[5] *See United States v. De La Garza*, 516 F.3d 1266, 1271 (11th Cir. 2008) (direct appeal); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir.1992) (direct appeal); *Bussey v. Allen*, No. 18-14732, 2019 WL 11880263, at *1 (11th Cir. Apr. 11, 2019) (habeas); *United States v. Williams*, 642 F.2d 136, 138 (5th Cir. 1981) (direct appeal).

In a footnote in their objections, [*see* Dkt. 106 at 23 n. 13], Defendants contend that *Ojegba v. Murphy*, 178 F. App'x 888 (11th Cir. 2006), did so, but that case ruled based on *Heck*, not waiver, and is unpublished besides. Defendants also cite a decision where this Court recently applied the doctrine to a § 1983 claim. *See Alexander v. Ledbetter*, No. 1:24-CV-540-LMM-JKL, 2024 WL 3548475, at *2 (N.D. Ga. Feb. 13, 2024), R&R adopted, (Mar. 6, 2024). But a review of that case reveals that the Court also relied solely on cases from other contexts, not § 1983. That likewise does not bind the Court here.

> It does not follow, however, that a guilty plea is a "waiver" of ante-
> cedent Fourth Amendment claims that may be given effect outside
> the confines of the criminal proceeding. The defendant's rights under
> the Fourth Amendment are not among the trial rights that he neces-
> sarily waives when he knowingly and voluntarily pleads guilty.

*Id.* at 320–21. *Second*, the Court concluded that state collateral estoppel principles

did not bar § 1983 claims either because the issues underlying those claims were

not actually litigated as part of the guilty plea. *Id.* at 312 *et seq.*

Defendants try to avoid *Haring* by insisting this case involved a different

kind of waiver—related to the facts of the *elements of the claim*—as if that somehow

bears on Mr. Fields's Fourth Amendment rights. But they cannot escape *Haring*'s

reach because even if that were correct law—and it isn't—it's wrong on the facts.

Start with the 2021 claims. Defendants' Motion argued that Mr. Fields

waived these claims because he "pled *nolo contendere* to littering and obstructing

Defendant Stewart." [Dkt. 87 at 7]. They cite *United States v. Williams* for the prem-

ise that "a plea of nolo contendere admits every essential element of the offense

that is well pleaded in the charge." 642 F.2d 136, 138 (5th Cir. 1981). But that is not

the law with respect to *plea waivers*; *Williams* dealt not with plea waivers but with

the admissibility of prior convictions.

By contrast, when it comes to collateral estoppel (the operative principle un-

der *Haring*), the Eleventh Circuit has explained that *nolo* pleas do not amount to

an admission of the *facts* underlying the conviction:

> A guilty plea is distinct from a plea of *nolo contendere.* A guilty plea is an admission of all the elements of a formal criminal charge. A *nolo contendere* plea is instead a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Guilty pleas must be rooted in fact before they may be accepted. No similar requirement exists for pleas of *nolo contendere.* Courts may accept them without inquiring into actual guilt.

*Blohm v. Commissioner*, 994 F.2d 1542, 1554 (11th Cir. 1993) (cleaned up) (emphasis in original) (citing *North Carolina v. Alford*, 400 U.S. 25, 35 (1970)), cited in *United States v. Green*, 873 F.3d 846, 865 (11th Cir. 2017); *Bussey*, 2019 WL 11880263, at *1. So here, Mr. Fields has never admitted the *facts* of the elements of littering, the crime for which he was arrested. Therefore, there can be no waiver.

As for the 2022 claims, all parties agree that Mr. Fields pled to and was convicted of *different crimes* than solicitation, the crime of arrest. He did not plead guilty to soliciting anything. Thus, Defendants' only argument would appear to be that, by pleading to obstruction, Mr. Fields necessarily admitted the fact of the lawful arrest. But that is just a repackaging of the same faulty conclusion discussed with respect to *Heck*, above. As there, Mr. Fields could have pled based on other facts besides the lawfulness of the *arrest*.

Ultimately, Defendants' waiver argument thus lacks *any* legal support or merit. The Magistrate Judge was right to reject it. This Court should do the same and overrule Defendants' frivolous objection.

### E. The Court Should Overrule Defendants' Qualified Immunity Objections

#### 1. Defendants Did Not Move to Dismiss the 2021 False Arrest Claim on Qualified Immunity Grounds

As Mr. Fields's Response explains, Defendants waived the argument that qualified immunity bars the 2021 False Arrest claim, and this Court can "decline to consider" that objection. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009); [*Ref.* Dkt. 92 at 8]. Defendants' Motion contained *no reference whatsoever* to arguable probable cause (the applicable standard) nor did it discuss or even reference the elements for littering. "Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009). Thus, the Court should not consider the objection.

#### 2. Alternatively, the 2021 Defendants Violated Clearly-Established Law by Arresting Mr. Fields Without Arguable Probable Cause

Even if the Court were to assess qualified immunity for the 2011 false arrest claim, Defendants cannot demonstrate that they had arguable probable cause to arrest Mr. Fields. Clearly established law required that officers have arguable probable cause at the time of the arrest. As Mr. Fields's Response explains, Defendants' argument ignores the language of O.C.G.A. § 16-7-42(1)(A), and the video evidence at best raises a fact question for a jury. [*Ref.* Dkt. 92 at 8–12].

Defendants' objections to the R&R are equally baseless. They claim the Magistrate Judge failed to look at the clearly established prong of the qualified

immunity analysis. [Dkt. 106 at 28–29]. But in the false arrest context, "arguable probable cause" incorporates that prong because it considers the constitutional question—whether there was probable cause—from the standpoint of the reasonable officer. *See Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023). And an officer lacks arguable probable cause when "the text of an applicable statute plainly precludes him from making an arrest under that statute." *Id*. That is the case here, so Mr. Fields does not need to point to case law addressing an identical fact pattern.

Defendants also object that the Magistrate Judge "erred by not conducting an arguable probable cause analysis." [Dkt 106 at 25]. Not so—on the contrary, the Magistrate Judge spent several pages doing just that. [*See* Dkt. 100 at 28–31].

They also raise several arguments related to "intent." [Dkt. 106 at 27–28]. They claim that the Magistrate Judge erred by analyzing the officer's "intent." They claim that littering is a strict liability crime. And they claim that the officers need not accept Mr. Fields's explanation of his intent, citing *District of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). But those arguments are beside the point.

In *Wesby*, officers responded to a call about a late-night party in a house that had been unoccupied for months. Inside, they found "a makeshift strip club," and "[a]fter seeing the uniformed officers, many partygoers scattered into other parts of the house." *Wesby*, 583 U.S. at 52. "Each of the partygoers claimed that someone had invited them to the house, but no one could say who." Officers eventually

talked on the phone to a woman named "Peaches" who claimed she had given them permission. But they also called the owner, who "confirmed that he had not given Peaches (or anyone else) permission to be in the house." *Id.* at 53. The Court concluded the officers were not required to credit Peaches's statement and instead that they had probable cause to arrest the partygoers for unlawful entry.

That case is nothing like this one. Here, officers knew that Mr. Fields was allowed to be where he was, and they knew the property was his. As explained in Mr. Fields's response, the littering statute refers to refuse or junk that is "discarded or abandoned." O.C.G.A. § 16-7-42(1)(A). Mr. Fields has not alleged that he abandoned any property, and nothing in the video evidence suggests that he did either. Thus, the officers lacked arguable probable cause. Whatever conclusions the Magistrate Judge made about the officers' subjective intent or about their belief about Mr. Fields's statements were secondary to that conclusion.

Accordingly, Defendants qualified immunity objection for the 2021 false arrest claim should be overruled.

### 3. The 2022 Defendants Violated Clearly-Established Law by Arresting Mr. Fields Without Arguable Probable Cause and Using Excessive Force Against Him

As for the 2022 claims for Mr. Fields's arrest for solicitation, Defendants recycle many of the same points. These are fully addressed above and in Mr. Fields's prior Response, both for the false arrest claim, [*ref.* Dkt. 91 at 14–17], and the

alternative excessive force claim [*ref.* Dkt. 91 at 17–24], which the Magistrate Judge declined to address at this stage.

Besides solicitation, Defendants state that the Magistrate judge "erred by not conducting a probable cause analysis into O.C.G.A. § 16-7-63(a)," which outlaws burning a fire without taking appropriate precautions "to prevent escape of such fire onto the lands of another" as well as "caus[ing] a fire by discarding" a flaming object that "may cause a forest fire." [Dkt. 106 at 30–31].

There was no reason for the Magistrate Judge to analyze probable cause under that statute because *Defendants never raised it as a basis for their Motions*, which focused solely on solicitation. [*See* Dkt. 80 at 8; Dkt. 89 at 9–10]. Defendants raised this argument for the first time in their Reply, but "[a]rguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." *In re Egidi*, 571 F.3d at 1163. Nor is the Magistrate referral process intended for Defendants to get bite after bite at the same apple. Because Defendants did not present this new argument to the Magistrate Judge, he was under no obligation to address it, and this Court can "decline to consider" that basis for objection. *Williams*, 557 F.3d at 1292.

Even on the merits, the new argument is baseless. Defendants claim the fire was "not controlled" and "explod[ed]." [Dkt. 106 at 31]. That is pure hyperbole. And it is a dispute of the facts alleged in the Complaint, *e.g.*, that the fire was

"small" and was extinguished by the firefighters by merely stepping on it. [Dkt. 75 at ¶¶ 66, 74–75]. The video supports those allegations. Nothing suggests that Mr. Fields even remotely violated that statute, or that the officers had arguable probable cause to arrest him for it.

Accordingly, Defendants' objection that the officers were entitled to qualified immunity for the 2022 arrest and force claims should be overruled.

## F.  The Court Should Overrule Defendants' Property Claim Objection

The Magistrate Judge concluded that Mr. Fields stated federal constitutional property deprivation claims that are not subject to dismissal. Defendants object on three grounds: *first*, that Mr. Fields did not properly allege a "seizure"; *second*, that the seizure was reasonable and thus constitutionally proper; and *third*, that they should be entitled to qualified immunity. They are wrong on all three.

On the *first* point, as the Magistrate Judge found, there is no doubt that Mr. Fields *alleged* that a seizure occurred. Defendants contend only that those allegations "have no factual basis." [Dkt. 106 at 33]. But as discussed regarding the *Monell* argument in *Section A*, above, Mr. Fields is not obligated to provide factual support at this stage, before any discovery has occurred.

Moreover, in Defendants' newly cited case, the court concluded exactly the opposite of what they argue for here, holding that "we have no difficulty concluding that the gathering and destruction of class members' personal property is a

meaningful interference with their possessory interest in that property." *Pottinger v. City of Miami*, 810 F. Supp. 1551, 1571 (S.D. Fla. 1992). Defendants have no authority supporting their claim that there was no seizure.

*Second*, Defendants claim that any seizure was reasonable, again citing *Pottinger*. On this point, *Pottinger,* a case from November 1992, focused the reasonableness inquiry on the individual's privacy rights. But that is bad law. Only a month later, in December 1992, in *Soldal v. Cook County*, "the Supreme Court rejected the notion that 'the Fourth Amendment protects against unreasonable seizures of property only when privacy or liberty is also implicated.'" *Hoefling v. City of Miami*, 811 F.3d 1271, 1281 (11th Cir. 2016) (citing *Soldal*). Though privacy is a touchstone for *searches*, it is no longer the touchstone for *seizures*. Instead, "the alleged removal and destruction of [the plaintiff's property] . . . constitutes a seizure under the Fourth Amendment" and a plaintiff pleading as much can "sufficiently state[] a claim for an unconstitutional seizure." *Id.*

Defendants' other cited case only reaffirms that point.  In *Watkins v. Davis*, Judge Totenberg explained that the reasonableness of a seizure of property depends on a warrant (not the individual's privacy): "Generally, the seizure of personal property is *per se* unreasonable when not pursuant to a warrant issued upon probable cause." 696 F. Supp. 3d 1276, 1307 (N.D. Ga. 2023). Defendants had no warrant here, making their seizure *per se* unreasonable.

That case also forecloses Defendants' *third* argument about qualified immunity, because, as Judge Totenberg (quoting the Eleventh Circuit) noted, this law was clearly established years before: "The right to be free from warrantless seizures of personal property, absent an applicable exception, was clearly established to the point of obvious clarity in 2012." *Id.* at 1308 (quoting *Crocker v. Beatty*, 886 F.3d 1132, 1138 (11th Cir. 2018)).

Even though the Magistrate Judge did not explicitly discuss these latter two points, that is no basis to sustain Defendants' unsupported objection. Accordingly, the Court should overrule Defendants' objection.

## G. The Court Should Overrule Defendants' Conclusory State Law Claim Objection

The Magistrate Judge's recommendation concerning the state law claims was identical to its prior recommendation, which this Court previously adopted. [*See* Dkt. 23 at 5; Dkt. 27 at 1–2]. Defendants' passing objection states in conclusory fashion that the video evidence "disprove[s] Plaintiff's allegations that Defendants actually intended to unlawfully take Plaintiff's property from him or abandoned [*sic.*] it." [Dkt. 106 at 35]. But they don't meaningfully elaborate on that.

This Court—like others—has repeatedly explained that objections that are "conclusive and unsupported by any factual or argumentative proffer" lack merit and should be overruled. *Smith v. Specialized Loan Servicing, LLC*, No. 1:17-CV-2940-LMM-RGV, 2018 WL 4850229, at *2 (N.D. Ga. Sept. 17, 2018) (citing *United*

*States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009)); *see also, e.g., Young v. Ray of Hope Counseling Servs., Inc.*, No. 1:20-CV-03684-LMM, 2023 WL 3680116, at *4 n.3 (N.D. Ga. Mar. 9, 2023) ("This is not a proper objection because it is overly conclusory and fails to give the Court sufficient information to review the issue."). Likewise here, the Court should reject Defendants' frivolous and conclusory objection about the *already-approved* state law claims.

## CONCLUSION

For the reasons above, the Court should overrule Defendants' objections and deny their Motions to Dismiss (except as to *Count 2*).

## **Signature of Counsel**

Respectfully submitted, this 3rd day of March, 2025.

> */s/ E. Allen Page*
> Amanda Kay Seals
> Georgia Bar No. 502720
> E. Allen Page
> Georgia Bar No. 640163
> BONDURANT, MIXSON
>   & ELMORE, LLP
> 1201 West Peachtree Street, NW
> Suite 3900
> Atlanta, GA 30309
> Tel: 404-881-4100
> seals@bmelaw.com
> page@bmelaw.com
>
> *Attorneys for Plaintiff*

## <u>Certificate of Compliance</u>

Pursuant to Local Rule 7.1(D), I certify that this submission complies with the page and word requirements in Local Rule 5.1 because it does not exceed 25 pages and is prepared with size 13 Book Antiqua font.

<u>*/s/ E. Allen Page*</u>
E. Allen Page

## <u>Certificate of Service</u>

I certify that on March 3, 2025, I submitted the foregoing via the Court's

CM/ECF system, which will serve an electronic copy on all attorneys of record.

*/s/ E. Allen Page*
E. Allen Page