IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KIRK MICHAEL FIELDS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:22-cv-3684-LMM |
| GWINNETT COUNTY POLICE DEPARTMENT, ET AL., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This matter comes before the Court for consideration of the Non-Final Report and Recommendation (R&R), Dkt. No. [100], in which Magistrate Judge John K. Larkins III recommends that Defendant's motions to dismiss, Dkt. Nos. [80, 87, 89], be granted as unopposed as to Plaintiff's excessive force claims against Defendants Lewis and Johnson and otherwise denied. Defendants have filed their objections to the R&R. Dkt. No. [106]. Plaintiff has not filed objections to the R&R, but he has responded to Defendants' objections. Dkt. No. [110].

## I. Legal Standard and Background

A district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. <u>United States v. Raddatz</u>, 447 U.S. 667, 680 (1980). Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews any portion of the Report and Recommendation that is the subject of a proper objection on a de novo basis and any non-objected portion under a "clearly erroneous" standard. "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." <u>Marsden v. Moore</u>, 847 F.2d 1536, 1548 (11th Cir. 1988).

Plaintiff is homeless. Through counsel he has filed an amended complaint raising civil rights claims under 42 U.S.C. § 1983 alleging that various officials employed by the Gwinnett County Police Department (GCPD) repeatedly employed excessive force against him, falsely arrested him, and abandoned or destroyed his property.[1] In their motions to dismiss, all Defendants argue that Plaintiff's claims should be dismissed because: (1) Plaintiff's false arrest and excessive force claims are barred

---

[1] For unknown reason, Plaintiff's amended complaint was docketed twice. Dkt. Nos. [68, 75]. This Court will treat the amended complaint appearing at Docket Entry 75 as the operative complaint. For a more detailed discussion of Plaintiff's claims and the procedural history of this action, see the R&R, Dkt. No. [100] at 2-7.

under the doctrine discussed in Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), (2) Defendants are entitled to qualified immunity, (3) Plaintiff's property claim is too conclusory to warrant relief, and (4) Defendants are entitled to official immunity in connection with Plaintiff's state law claim for trespass. Defendants other than Howse[2] argue that this Court lacks personal jurisdiction over them because of faulty service and that Plaintiff's federal question claims are barred by the statute of limitations. Defendant GCPD argues that it is not a legal entity subject to suit.

 The Magistrate Judge agreed with Plaintiff that he should be able to replead the complaint to correct the misnomer and change GCPD to Gwinnett County, Georgia. In response to Defendants' argument that the amendment would be futile because Plaintiff has not stated a claim under Monell v. Dep't of Soc. Servs., City of N.Y., 436 U.S. 658, 694 (1978), the Magistrate Judge disagreed, finding that Plaintiff's allegations of unofficial policies of the police department were sufficient to survive a motion to dismiss. The Magistrate Judge further determined that Defendants are not entitled to dismissal of some of Plaintiff's older claims on statute of limitations grounds because it is not clear from the face of the complaint

---

[2] Defendant Howse waived personal service. Dkt. No. [13].

that Plaintiff would be unable to defeat the limitations bar on equitable, relation back, or other grounds.

The Magistrate Judge also concluded that Plaintiff had provided sufficient evidence to show that Defendants[3] were all properly served to avoid dismissal at this stage, and that Plaintiff's claims are not barred under the Heck doctrine because he is no longer in custody and his short period in custody did not give him a meaningful opportunity to pursue a writ of habeas corpus and because, with respect to one of his arrests, the Heck bar does not apply.

In addition, the Magistrate Judge determined that Defendants' argument that Plaintiff's Alford plea waived his claims is inapplicable to claims raised under § 1983, and that Defendants have not presented sufficient evidence to establish that they are entitled to qualified immunity. Finally, the Magistrate Judge held that Plaintiff's deprivation of property claims were sufficient to survive a motion to dismiss and that Plaintiff has sufficiently alleged malice to survive Defendants' assertion of official immunity related to Plaintiff's state law claims.

---

[3] Defendant Howse did not contest personal service. Dkt. No. 100 at 13.

## II. Discussion

### A. <u>Monell</u> Liability

In their objections, Defendants first argue that the Magistrate Judge erred in determining that Plaintiff had sufficiently stated a <u>Monell</u> claim by alleging a custom or policy of GCPD. According to Defendants, Plaintiff's allegations of a custom are too conclusory to survive because they do not identify prior incidents of similar conduct that establish a claim beyond mere speculation. However, given the allegations of the entire complaint along with the video evidence that was described in detail by the Magistrate Judge, Dkt. No. [100] at 28-34, which both suggest that police officials struggled to conjure trumped-up charges against Plaintiff to keep him off the streets because he was homeless and annoying, the allegation that those officials were acting in accord with a custom or unofficial policy to harass and deprive homeless individuals of their property is certainly plausible under the standard discussed in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Moreover, Plaintiff has alleged repeated instances of false arrest, of the use of excessive force against him, and of his property being discarded or destroyed by police, and such allegations have been found sufficient to state a claim under <u>Monell</u>, even under the more exacting pleading standards of <u>Iqbal</u> and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555

(2007). E.g., Fountain v. City of Lakeland, 2011 WL 3703454, at *5–6 (M.D. Fla. Aug. 23, 2011) (declining to dismiss complaint alleging "broad statements" of custom or practice based only on factual allegations involving individual defendant's constitutional violations); Jarrell v. Geo Grp., Inc., 2011 WL 5357630, at *4 (M.D. Fla. Oct. 31, 2011) (denying motion to dismiss where complaint alleged policy or custom substantiated only by individual defendant's experience); Congleton v. Gadsden Cnty., Fla., 2011 WL 2174350, at *4 (N.D. Fla. June 1, 2011) (court could reasonably infer existence of known widespread practice based on allegations of several incidents involving the individual plaintiff). At the least, this Court deems it appropriate to allow Plaintiff the opportunity to establish his claim through discovery as it is evident that the facts that would prove or disprove the claim are held by the GCPD. See Estate of Duran v. Chavez, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015) ("[The] level of particularity and notice [in a complaint] is sufficient where . . . it may be fairly assumed that Defendants have access to past events and to statements of policy that will either prove or disprove Plaintiffs['] allegations."). This Court thus agrees with the Magistrate Judge that

allowing Plaintiff to correct the misnomer in his complaint would not be futile.[4]

**B. Challenge to Personal Service**

In their motion to dismiss, Defendants (other than Howse) contend that they were not properly served with process. In this case, service on those Defendants was made by delivering copies of the summons and amended complaint to Corporal Robert Broccoli, GCPD's court liaison, on September 17, 2024. Dkt. No. [78]. Defendants contend that Broccoli is not authorized to accept service on Defendants' behalf, and Broccoli himself submitted an affidavit in which he disclaims any authority to serve as Defendants' agent for accepting service. Plaintiff's process servers provided their own affidavits in which they

> attest that they were told by the front office at Gwinnett Police Headquarters that Corporal Broccoli—whose office was at a different location—was the officer who would accept service on behalf of the individual Defendants; that when they each called Corporal Broccoli he confirmed that he was available to accept service, that he did, in fact, accept service and at no point indicated that he was not authorized to do so; and that both [process servers] were surprised to learn that Corporal Broccoli has denied that he is authorized to accept service in this case. [One of the process servers] further attests that she was familiar with Corporal Broccoli because she previously had served papers—including subpoenas and summonses—upon Broccoli in

---

[4] Defendants also assert that Gwinnett County is entitled to sovereign immunity with regard to Plaintiff's state law trespass claims. Dkt. No. [106] at 7. However, Plaintiff concedes that point, stating that "he is only advancing those claims against the [individual] Defendant Officers." Dkt. No. [110] at 6 n.4.

      court cases involving Gwinnett County Police Officers, including for actions involving excessive force.

Dkt. No. [100] at 38 (citations to the record omitted).

      Generally, for an agent to act on behalf of a principal, the principal must actively appoint the agent for the specific purpose, and an agent must be authorized by appointment or by law to accept service. Fed. R. Civ. P. 4(e)(2). For service on an agent by appointment to be effective, actual appointment for the specific purpose of receiving process is required; "a factual basis for believing that an appointment of that type has taken place" must be shown. 4A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1097 (4th ed. 2024).

      While the Magistrate Judge and Plaintiff have made a fair argument that Defendants did not themselves disclaim that they authorized Broccoli, this Court finds that a statement directly from the purported agent suffices to demonstrate that he was not properly authorized to accept service under Rule 4 or Georgia law. This Court thus concludes that Defendants other than Howse were not properly served.

      However, Plaintiff also correctly points out that dismissal for improper service is not the only solution. This Court has the discretion to extend the time for service of process even absent a showing of good cause "if the applicable statute of limitations would bar the refiled action, or if the

8

defendant is evading service or conceals a defect in attempted service." Horenkamp v. Van Winkle and Company, Inc., 402 F.3d 1129, 1132-33 (11th Cir. 2005). The statute of limitations is clearly in play here, see Dkt. No. [87] at 4; Dkt. No. [89] at 4, and, other than denying that they are not personally responsible for Plaintiff's failure to effect service, Dkt. No. [95] at 5, Defendants have not argued that the time for service should not be extended. Moreover, given the circumstances, especially considering that Defendants' coworkers effectively misled the process servers, and Broccoli himself failed to alert the process servers to the fact that he was not authorized to accept service of process on Defendants' behalf, this Court finds that extension of time for Plaintiff to effect service on Defendants is appropriate.

    **C. Heck Bar**

As noted, the Magistrate Judge determined that Plaintiff, given his short sentences of incarceration, did not have a meaningful opportunity to challenge his convictions, and thus the Heck bar should not apply. In Heck, the Supreme Court held that in order to recover damages from an unlawful imprisonment, a "§1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called

into question by a federal court's issuance of a writ of habeas corpus[.]" Heck, 512 U.S. at 486-87. This rule is based on "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 486. "By contrast, 'if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'" Harden v. Pataki, 320 F.3d 1289, 1295 (11th Cir. 2003) (quoting Heck, 512 U.S. at 487).

The exception to the Heck doctrine invoked by the Magistrate Judge "evolved from Justice Souter's concurring opinion in Spencer v. Karma, 523 U.S. 1, 19-21 (1998) (Souter, J., concurring), in which he suggested that the favorable-termination requirement in Heck should not apply to a prisoner no longer in custody." Dkt. No. [100] at 20. The Eleventh Circuit has suggested (but not adopted) its own gloss on Justice Souter's proposed rule where the Heck bar would not apply when the plaintiff did not have a meaningful opportunity to challenge his conviction. Id.; Topa v. Melendez, 739 F. App'x 516, 519 n.2 (11th Cir. 2018).

The Magistrate Judge determined that the exception to the Heck bar applies to Plaintiff's claims related to his first arrest because Plaintiff was

10

incarcerated for only sixty days. Dkt. No. [100] at 20. Defendants counter that Plaintiff was on probation for an additional ten months after his incarceration, and he thus satisfied the habeas corpus in-custody requirement for a year. The Magistrate Judge determined, however, that, in these circumstances, it is not clear that Plaintiff's claims would be barred under Heck and held that making reasonable inferences in Plaintiff's favor requires the Court to deny dismissing Plaintiff's claims under Heck. Id. (relying on Arnold ex rel. Arnold v. City of Hampton, No. 1:21-CV-4970-SEG, 2023 WL 3243913, at *11 (N.D. Ga. Mar. 16, 2023).

At the outset, it is important to note that only one claim of the amended complaint is potentially called into question under Heck— Plaintiff's claim of false arrest related to his first arrest for littering. Plaintiff entered a nolo plea to that claim. His other claims of excessive force and trespass to property, and his false arrest claim related to his second arrest for solicitation[5] are not Heck barred because a judgment in Plaintiff's favor would not contradict the facts essential to his conviction. Henley v. Payne, 945 F.3d 1320, 1327 (11th Cir. 2019) (Heck does not bar false arrest claim when plaintiff was arrested for trespass but "he pled guilty to wholly

---

[5] Plaintiff was not convicted of solicitation.

unrelated offenses");[6] Dyer v. Lee, 488 F.3d 876, 884 (11th Cir. 2007) (Heck does not bar excessive force claim even when plaintiff was convicted of using violence to resist arrest).

Turning to Plaintiff's claim related to his first arrest for littering to which he entered a nolo contendere plea, this Court concludes that Heck does not bar that claim. While Defendants insist that his one-year period of incarceration plus probation afforded Plaintiff with a sufficient opportunity to file, for example, a habeas corpus petition, another judge of this Court in the Arnold case mentioned above held that it is not clear that Heck would bar a claim in circumstances similar to this case. Arnold, 2023 WL 3243913, at *11 (citing Spencer, 523 U.S. at 19-21 (Souter, J., concurring), for the proposition that "Heck did not hold that a released prisoner . . . is out of court on a § 1983 claim. . . . The better view . . . is that a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to

---

[6] Defendants insist that Plaintiff's false arrest claim clearly implies the invalidity of his obstruction conviction because in order to prevail, Plaintiff would have to prove that the officers were not engaged in Plaintiff's lawful arrest. However, as the Eleventh Circuit held, "as long as it is *possible* that a § 1983 suit would not negate the underlying conviction, then the suit is not Heck-barred." Dyer, 488 F.3d 876, 879-80 (emphasis added). Here, the record shows only that Plaintiff was accused and convicted of kicking, spitting on, and twisting the arm of Defendant Howse. Dkt. No. [89-2] at 1-2. Nothing in the record states what lawful duties Defendant Howse was engaged in at the time that the kicking, *et cetera*, occurred. It is thus possible, based on this record, that Plaintiff's suit would not negate his obstruction conviction.

satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy."). As noted by Arnold, the Supreme Court has never held that a Heck bar would apply to a prisoner who is no longer in custody and has no opportunity of obtaining a favorable ruling related to his convictions in a post-conviction forum. Arnold, 2023 WL 3243913, at *11; see also Harvey v. Daniels, 625 F. App'x 499, 501 (11th Cir. 2015) ("It is unclear, however, whether Heck bars § 1983 claims once, as in the instant case, a state prisoner is no longer in custody and cannot pursue habeas relief.").

Moreover, it is not at all clear that one year is sufficient time to prosecute a habeas corpus case in state court, and it clearly would not be sufficient for a petitioner to exhaust his state court remedies and then obtain the writ in federal court. State court habeas corpus cases routinely last well over a year, and there is no evidence in the record for this Court to find that Plaintiff had sufficient time to prosecute his habeas corpus case. See Teagan v. City of McDonough, 949 F.3d 670, 678-79 (11th Cir. 2020) ("It is unclear whether Heck would apply here, as the length of imprisonment was so short 'that a petition for habeas relief could not have been filed and granted while [Ms. Teagan] was unlawfully in custody.'" (quoting Morrow v. Fed. Bureau of Prisons, 610 F.3d 1271, 1272 (11th Cir.

13

2010)) (alteration in original)); see also Wright v. St. Lawrence, 691 S.E.2d 880, 882 (2010) (holding that once petitioner is released from custody, his habeas corpus petition is moot); Diaz v. State of Fla. Fourth Jud. Cir. ex rel. Duval Cnty., 683 F.3d 1261, 1266 (11th Cir. 2012) (district court properly dismissed habeas corpus petition as moot once petitioner had fully satisfied his state court sentence).

In addition, it is not entirely clear that Plaintiff could have sought habeas corpus relief while on probation. Certainly, under federal law, probation satisfies the in-custody requirement to proceed with a habeas corpus petition. Duvallon v. Florida, 691 F.2d 483, 485 (11th Cir. 1982). However, as indicated above, state prisoners must first exhaust their state court remedies before seeking federal habeas corpus relief, Johnson v. Florida, 32 F.4th 1092, 1095-96 (11th Cir. 2022), and, in Sorrow v. Vickery, 184 S.E.2d 462, 462 (Ga. 1971), the Georgia Supreme Court held that a habeas corpus proceeding was rendered moot by petitioner's release on parole. While there may be suggestions in the state's case law that the holding in Sorrow would not be upheld if it were considered today, see Hardison v. Martin, 334 S.E.2d 161, 163 (1985) (holding that suspension of a driver's license that caused petitioner to lose his job was a significant enough restraint on his liberty to allow a habeas corpus petition to

proceed), no Georgia case has rejected Sorrow or specifically held that parole or probation imposes a significant enough restraint on a petitioner's liberty to permit him to pursue the writ. Given the fact that it is unlikely that Plaintiff had a meaningful opportunity to pursue habeas corpus relief in either state or federal court, this Court holds that Heck does not bar his false arrest claim.[7]

### D. Defendants' Remaining Objections

In their remaining objections, Defendants have failed to show that the Magistrate Judge erred. Defendants have not shown at the motion to dismiss stage that they are entitled to qualified immunity. Indeed, the video evidence that *they* provided show them scheming to find a reason to arrest Plaintiff and then turning off their body cam microphones for extended periods, indicating that they lacked probable cause and were well aware that they were in the process of possibly violating Plaintiff's rights.

Defendants have further failed to demonstrate that the Magistrate Judge erred in determining that Plaintiff's Fourth Amendment deprivation of property claim survived their motion to dismiss. The allegations in the complaint are that Defendants simply left Plaintiff's valuable possessions

---

[7] The Magistrate Judge determined that the Heck bar should not be applied "at this juncture." Dkt. No. [100] at 23. To be clear, this Court takes it a step further and holds that the Heck bar does not apply at all.

out in the open after they arrested him and made no effort to secure them so that they would not be lost, stolen, or destroyed. Defendants rely on D'Aguanno v. Gallagher, 50 F.3d 877, 880 (11th Cir. 1995), where the Eleventh Circuit determined that the homeless plaintiffs, who were camping on private land, did not have an expectation of privacy in belongings stored on private property without the landowner's permission. However, the claim in D'Aguanno was that the police improperly searched their belongings without a warrant. In this case, the claim is that Defendants deprived Plaintiff of his property by failing to secure it upon Plaintiff's arrest. As quoted by the Magistrate Judge, the Eleventh Circuit has stated that "[a] seizure occurs when 'there is some meaningful interference with an individual's possessory interest in personal property.'" *Bevan v. Lee Cnty. SO*, 213 F. App'x 824, 829 (11th Cir. 2007). While this Court is not yet ready to declare that a police officer should be on notice that it is a constitutional violation to fail to secure the property of an arrestee, this Court agrees that, under the facts alleged in the complaint, the arresting officers may well have meaningfully interfered with Plaintiff's possessory interest in his property. Further factual development could demonstrate that Defendants fully intended that Plaintiff lose his belongings when they arrested him as part of their desire to harass him. As

16

a result, this Court concludes that Defendants have not yet established that they are entitled to qualified immunity regarding this claim.

Finally, this Court again agrees with the Magistrate Judge that the complaint sufficiently alleges facts to show that Defendants, in manufacturing pretextual charges against Plaintiff, maliciously intended that Plaintiff lose his property. Accordingly, this Court concludes that Defendants have not yet established that they are entitled to official immunity to Plaintiff's state law claims.

**III. Conclusion**

Having reviewed the record in light of Plaintiff's objections, this Court concludes that the Magistrate Judge is mostly correct. Accordingly, the R&R, Dkt. No. [100], is hereby **ADOPTED IN PART** as the order of the Court, Defendants' motions to dismiss, Dkt. Nos. [80, 87, 89], are **GRANTED IN PART**, Plaintiff's excessive force claims against Defendants Lewis and Johnson are **DISMISSED**, and this Court agrees that Defendants other than Howse were not properly served with process. Defendant's motions to dismiss are otherwise **DENIED**. See also *supra* n.7.

As discussed, the time for service of process in this matter is **EXTENDED** pursuant to Fed. R. Civ. P. 4(m), and Plaintiff must serve the

unserved Defendants within thirty days of the date of this order. Given the age and advanced state of this case, the Court voices its hope that counsel for Defendants will be cooperative in assisting Plaintiff's counsel in effecting service. Plaintiff is **ORDERED** to file an amended complaint, also within thirty days, to change GCDP to Gwinnett County, Georgia.

As noted by the Magistrate Judge, the parties are again reminded to confer and file their motions for discovery and proposed discovery schedules within thirty days of the date of this order. The Clerk is **DIRECTED** to submit this matter to the Magistrate Judge for further proceedings.

**IT IS SO ORDERED** this 28th day of April, 2025.

_____
**Leigh Martin May**
**United States District Judge**